The **BOROUGH OF SAYREVILLE,**
et al., Plaintiffs,

v.

**UNION CARBIDE CORPORATION**
et al., Defendants.

**Civil Action No. 94–5674 (AJL).**

United States District Court,
D. New Jersey.

April 10, 1996.

Nielsen V. Lewis, Skey, Dumont & Matejek, Princeton, NJ, John A. Avery, Barry & McMoran, Newark, NJ, for Plaintiffs.

Faith S. Hochberg, United States Attorney, Susan C. Cassell, Assistant United States Attorney, District of New Jersey, Newark, NJ, Lois J. Schiffer, Assistant Attorney General, Paul H. Ladehoff, United States Department of Justice, Environment and Natural Resources Division, Environmental Defense Section, Washington, DC, for Defendants United States Department of Defense (United States Army).

Kenneth R. Russell, Lynch, Martin, Philibosian, Chansky, Fitzgerald & Kane, North Brunswick, NJ, for Defendant Middlesex County Utilities Authority.

Dennis M. Toft, Wolff & Samson, P.C., Roseland, NJ, for Defendants GAF Corp. and Chevron Chemical Co.

William L. Handler, George R. and William L. Handler, West Orange, NJ, for Defendant Anselmi & DiCicco, Inc.

Glenn A. Harris, Defense Liaison Counsel, Levin & Hluchan, P.C., Voorhees, NJ, William H. Hyatt, Jr., Pitney Hardin Kipp & Szuch, Morristown, NJ, for Defendants 55 Acre Corp. and Melvin H. Safran.

Steven N. Yermish, Secondary Defense Liaison Counsel, Caplan & Luber, Marlton, NJ, for Defendants Simon Wrecking Co. and Mid-State Trading Co.

Damon R. Sedita, Schwartz, Tobia & Stanziale, Montclair, NJ, for Defendants John C. Polak, Sr. and Theresa C. Polak.

Michael D. Suarez, Joseph M. Suarez, Suarez & Suarez, Jersey City, NJ, for Defendant Kupper Associates.

William J. Hanley, Ronca, McDonald & Hanley, Livingston, NJ, for Defendants Joao Martins, Rogerio Martins and Manuel Martins.

Richard J. Schachter, Schachter, Trombadore, Offen, Stanton & Pavics, Somerville, NJ, for Defendants Union Carbide Corp. and Union Carbide Chemicals and Plastics Co., Inc.

Jonathan M. Heilbrunn, Stacey J. Citron, Heilbrunn, Finkelstein, Heilbrunn, Alfonso, Goldstein & Pape, Old Bridge, NJ, for Defendants Ben Rosenblum and Aron Rosenblum.

Thomas S. Cosma, Vincent E. McGeary, Connell, Foley & Geiser, Roseland, NJ, for Defendant George Harms Construction Co., Inc.

Christopher R. Gibson, Archer & Greiner, Haddonfield, NJ, for Third-Party Defendant Air Products & Chemicals, Inc.

Robert E. Plunkett, LeBoeuf, Lamb, Greene & MacRae, Newark, NJ, for Third-Party Defendant Aluminum Company of America, Inc.

David E. Loder, Frank A. Luchak, Duane, Morris & Heckscher, Cherry Hill, NJ, for Third-Party Defendant Lehigh Structural Steel Co.

Kevin M. McKenna, Kleinbard, Bell & Brecker, Cherry Hill, NJ, for Third-Party Defendant Small Tube Products, Inc.

Michael A. Bogdonoff, Dechert, Price & Rhoads, Philadelphia, PA, for Settled Defendants.

OPINION

LECHNER, District Judge.

This is an action brought by plaintiffs the Borough of Sayreville ("Sayreville"), Mobil Oil Corporation ("Mobil"), Rhone-Poulenc, Inc. ("Rhone-Poulenc") and Ruetgers-Nease Corporation ("Ruetgers-Nease") (collectively

the "Plaintiffs") against defendant United States Department of Defense (the "Government") and numerous other defendants (collectively the "Co–Defendants") seeking cost recovery, contribution and declaratory relief for the cleanup of environmental contamination under Federal and state statutory and common law including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. §§ 9601–75. An amended complaint (the "Amended Complaint") was filed on 7 December 1994. The Government filed an answer to the Amended Complaint (the "Government Answer") on 21 February 1995. Jurisdiction is alleged pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331.

Currently before the court is a motion filed by the Government for judgment on the pleadings dismissing the Plaintiffs' claims for joint and several liability under section 107 of CERCLA contained in Count I of the Amended Complaint, derivative claims for declaratory relief relating to joint and several liability contained in Count III of the Amended Complaint and claims for declaratory relief relating to natural resource damages also contained in Count III of the Amended Complaint (the "Motion for Judgment").[1] The Government seeks dismissal of Count I and certain claims in Count III with respect to itself and all Co–Defendants pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the Motion for Judgment is granted.

*Facts*

**A. Background**

Sayreville is a municipal corporation formed under the laws of the State of New Jersey. Amended Complaint, ¶ 5.[2] Mobile and Rhone–Poulenc are corporations incorporated under the laws of New York. *Id.*, ¶¶ 6–7. Ruetgers–Nease is a corporation incorporated under the laws of Pennsylvania. *Id.*, ¶ 8. The Government has facilities and functions in the State of New Jersey. *Id.*, ¶ 19; Government Answer, ¶ 19.

This action concerns the cleanup of environmental contamination at a site of approximately thirty-five acres located at or around Jernee Mill Road in Sayreville, Middlesex County, New Jersey (the "Site"). Amended Complaint, ¶ 32. Sayreville operated a solid waste landfill licensed by the State of New Jersey at the Site. *Id.* Hazardous substances defined under CERCLA were found at the Site causing the Site to be placed on the National Priorities List ("NPL") on 1 September 1983 by the United States Environmental Protection Agency ("EPA"). *Id.*, ¶¶ 33–34. In response to releases and threatened releases of hazardous substances at the Site, the EPA authorized the State of New Jersey Department of Environmental Protection ("NJDEP") to remediate the Site. *Id.*, ¶ 34.

On 20 June 1986, NJDEP issued a coercive Directive and Notice to Insurers, dated 19 June 1986, ("Directive I") to Plaintiffs and other Potentially Responsible Parties ("PRPs").[3] *Id.*, ¶ 35. Directive I directed

---

1. In support of the Motion for Judgment, the Government submitted: Notice of Motion for Judgment on the Pleadings Dismissing Plaintiffs' Claims for Joint and Several Liability Under CERCLA; Brief of the United States In Support of Its Motion for Judgment on the Pleadings Dismissing Plaintiffs' Claims for Joint and Several Liability Under CERCLA, attaching Exhibit A (the "Government Brief"); Reply Brief of the United States In Further Support of Its Motion for Judgment on the Pleadings Dismissing Plaintiffs' Claims for Joint and Several Liability Under CERCLA (the "Government Reply Brief").

In opposition, Plaintiffs submitted: Plaintiffs' Brief In Opposition to Defendant United States' Motion to Dismiss Counts One and Three of the Amended Complaint (the "Plaintiffs Brief").

2. When considering a motion for judgment on the pleadings, the court must accept all allegations in the complaint as true. *See infra* Discussion, Part A.

3. The caption of Directive I reads:

*In the Matter of the Sayreville Landfill III – And–Celotex Corporation; Chevron Chemical Company; Hercules, Incorporated; Insul–Coustics Company; Jim Walter Corporation; Liquid Energy Export, Inc.; Mid–State Trading Company; Mobil Chemical Company; Pfizer, Inc; Quigley Company, Inc.; Rhodia, Inc.; Rhone–Poulenc, Inc.; RKD Oil, Inc.; Ruetgers–Nease Chemical Company; The Borough of Sayreville; Simon Wrecking Company; and Vamp Chemical Resources, Inc. Respondents.*
*Id.*, ¶ 35.

Plaintiffs and other PRPs to fund a Remedial Investigation/Feasibility Study ("RI/FS") and pay $901,000 to NJDEP within thirty days or face treble damage liability in a future cost recovery action by NJDEP. *Id.*, ¶ 36. Plaintiffs denied responsibility for the discharges at the Site. *Id.*, ¶ 37. Directive I was eventually settled by a NJDEP Administrative Consent Order and Agreement ("ACO I") entered into by Sayreville, Mobil, Rhone–Poulenc, Ruetgers–Nease and other PRPs without admission of liability. *Id.* Pursuant to ACO I, the settling parties agreed to pay $901,000 to fund an RI/FS. *Id.*, ¶ 38.

On or about 7 August 1989, NJDEP issued a second directive ("Directive II") directing Rhone–Poulenc and other PRPs to arrange Phase 2 RI/FS by paying $632,899 to NJDEP.[4] *Id.*, ¶¶ 39–40. Partial payments towards Directive II were made to NJDEP by Rhone–Poulenc without admission of liability or fault. *Id.*, ¶ 40. On or about 18 September 1989, NJDEP issued a third directive ("Directive III") directing the named PRPs to arrange Phase 2 RI/FS by paying $580,157.41, the unpaid balance of Directive II, or face possible sanctions including treble damage liability in a future cost recovery action by NJDEP.[5] *Id.*, ¶¶ 41–42. In October and November 1989, certain Plaintiffs paid $171,867 to NJDEP in settlement of Directive III without admission of liability or fault. *Id.*, ¶ 43. Directive III was later settled by Rhone–Poulenc without admission of liability or fault. *Id.*

In 1990, B & V Waste Science and Technology Corp., NJDEP's contractor for the RI/FS, issued a Final Remedial Investigation Report reporting the presence of hazardous substances on and off the Site. *Id.*, ¶¶ 45–46. In August 1990, the EPA issued letters to Plaintiffs and others notifying them that they were PRPs for cleanup of the Site under section 107(a) of CERCLA, 42 U.S.C. § 9607. *Id.*, ¶ 50. On 28 September 1990, the EPA issued a Record of Decision ("ROD") selecting a cleanup plan for the Site with an estimated cost of $16.5 million for the first operable unit of cleanup and reserving for future decision whether a second operable unit of cleanup will be required. *Id.*, ¶ 51. Plaintiffs allege a second operable unit of cleanup could potentially exceed $50 million. *Id.*

In April 1991, NJDEP issued a fourth directive ("Directive IV") directing Plaintiffs and other PRPs to pay $16.5 million to fund the cleanup in the ROD.[6] *Id.*, ¶ 52. Directive IV provided that if the named PRPs did not comply with its terms, NJDEP would undertake the cleanup work and seek treble damage recovery from the Plaintiffs and other PRPs. *Id.*, ¶ 53. On 26 November 1991, Plaintiffs settled Directive IV by entering into a second Administrative Consent Order and Agreement ("ACO II") with NJDEP, in which the EPA concurred. *Id.*, ¶ 54. In ACO II, Plaintiffs agreed to perform cleanup of the Site but without admission of liability or fault and with reservation of all rights against non-settling PRPs. *Id.* Plaintiffs have since entered into a number of PRP agreements implementing the cleanup under ACO II. *Id.*, ¶ 55. Under the

---

**4.** The caption of Directive II reads:

*In the Matter of the Sayreville Landfill III Waste Disposal Site—And—Liquid Energy Export, Inc.; Mid–State Trading Company; Rhodia, Inc.; Rhone–Poulenc, Inc.; RKD Oil, Inc.; Simon Wrecking Company; Vamp Chemical Resources, Inc. and Union Carbide Corporation; Respondents.*

*Id.*, ¶ 41.

**5.** The caption of Directive III reads:

*In the Matter of the Sayreville Landfill III— And—Celotex Corporation; Chevron Chemical Company; Hercules, Incorporated: Insul–Coustics Company; Jim Walter Corporation; Mobil Chemical Company; Pfizer, Inc; Quigley Company, Inc.; Ruetgers–Nease Chemical Company; and The Borough of Sayreville; Respondents.*

*Id.*, ¶ 41.

**6.** The caption of Directive IV reads:

*In the Matter of the Sayreville Landfill III Waste Disposal Site—And—Airco–Speer Company; The Borough of Sayreville; The Carbon Graphite Group, Inc.; Celotex Corporation; GAF Corporation; GTE Products Corporation; General Electric Company; Hercules, Incorporated; Insul–Coustics Corporation; Jim Walter Corporation; Liquid Energy Export, Inc.; Mid–State Trading Company; Mobil Chemical Company; Quigley Company, Inc.; Pfizer, Inc; RCA Corporation; Rhodia, Inc.; Rhone–Poulenc, Inc.; RKD Oil, Inc.; Ruetgers–Nease Chemical Company, Inc.; Simon Wrecking Company; Vamp Chemical Resources, Inc. and Union Carbide Corporation.*

*Id.*, ¶ 52.

PRP agreements, Plaintiffs agreed to allocate the cleanup costs while reserving their rights to obtain indemnification, contribution and restitution from non-signatories to ACO II. *Id.*

Plaintiffs allege that to date they have incurred response costs in excess of $1 million for the RI/FS and in excess of $500,000 in furtherance of ACO II remediation of the Site. *Id.*, ¶ 56. Plaintiffs also allege they have never been administratively or judicially adjudicated to be liable for cleanup at the Site. *Id.*, ¶ 57.

### B. *Procedural History*

On 23 November 1994, Plaintiffs filed a complaint initiating this action and on 7 December 1994 filed the Amended Complaint. In Count I of the Amended Complaint, Plaintiffs seek to hold the Government and Co–Defendants jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs incurred or to be incurred at the Site and for natural resource damages. *Id.*, ¶¶ 59–71. In Count II, Plaintiffs seek contribution under section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), which provides for the equitable allocation of response costs by the court. *Id.*, ¶¶ 72–73. In Count III, Plaintiffs seek declaratory relief under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201–02 relating to joint and several liability, liability for natural resource damages and liability for contribution. *Id.*, ¶¶ 74–79. The remaining counts of the Amended Complaint contain claims for cost recovery and contribution under the New Jersey Spill Compensation and Control Act, N.J.S.A. § 58:10–23.11 *et seq.*, (Count IV) and various tort claims brought under Federal and state law including claims for nuisance (Count V), trespass (Count VI), strict liability (Count VII), tortious contamination (Count VIII) and indem-

nification and restitution (Count IX). *Id.*, ¶¶ 80–107.

On 21 February 1995, the Government filed its Answer. On 10 July 1995, the Plaintiffs, the Government and Co–Defendants filed a stipulation of voluntary dismissal without prejudice ("Stipulation") pursuant to Rule 41(a)(1)(ii) and (c) of the Federal Rules of Civil Procedure. Under the terms of the Stipulation, Plaintiffs' claim for natural resource damages under CERCLA in Count I (Amended Complaint, ¶ 71) was voluntarily dismissed with respect to the Government and all Co–Defendants. The Stipulation also dismissed without prejudice Counts IV, V, VI, VII, VIII and IX of the Amended Complaint with respect to the Government.

The Government filed its Motion for Judgment pursuant to Rule 12(c) seeking dismissal of certain claims. The Government argues the Plaintiffs, as PRPs, cannot maintain a cost recovery action under section 107(a) of CERCLA and can only seek contribution from other responsible parties under section 113(f) of CERCLA. Government Brief at 8–16; *see* 42 U.S.C. §§ 9607(a) and 9613(f). The Plaintiffs contend a private PRP may bring a cost recovery action as long as it has initiated a cleanup voluntarily and not as a result of civil actions brought by the United States or the State of New Jersey.[7] Plaintiffs Brief at 5–24; *see* 42 U.S.C. §§ 9607(a).

*Discussion*

### A. *Standard For Dismissal Under Rule 12(c)*

■ A defendant may move to dismiss a complaint or parts of a complaint before or after filing an answer. *See* Fed.R.Civ.P. 12(b)(6) and (c). A motion made before an answer is filed is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[8] *See* Fed.

---

7. Plaintiffs argue they reserved their rights to seek indemnification and contribution for all Directive and ACO costs from third parties because they settled all Directives and ACOs without admitting liability or fault. Plaintiffs Brief at 22–24.

8. Rule 12(c) provides:

Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as

R.Civ.P. 12(h)(2) ("[a] defense of failure to state a claim upon which relief can be granted ... may be made in ... [a] motion for judgment on the pleadings"). In this case, the Government's Motion for Judgment was filed after the Answer and is based on the argument that Plaintiffs failed to state a claim upon which relief can be granted in Count I and, in part, Count III.

■ A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). *Turbe v. Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991); *see also Britamco Underwriters, Inc. v. C.J.H., Inc.,* 845 F.Supp. 1090, 1092 (E.D.Pa), *aff'd,* 37 F.3d 1485 (3d Cir.1994) (table); *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 891 (D.Del.1991); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 515 (2d ed. 1990).

Like Rule 12(b)(6), Rule 12(c) requires the Court "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe,* 938 F.2d at 428 (citing *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1394–95 (3d Cir.1991)); *see also Dykes v. Southeastern Penn. Transp. Auth.,* 68 F.3d 1564, 1565 n. 1 (3d Cir.1995); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994).

A court may dismiss a complaint for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811–12, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Piecknick,* 36 F.3d at 1255; *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988);

provided in Rule 56, and all parties shall be given reasonable opportunity to present all ma-

*Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

## B. Framework of CERCLA Liability

Congress enacted CERCLA in 1980 in response to widespread concern over severe harms to the environment and public health arising from the improper disposal of hazardous wastes and other hazardous substances. *See* 2 *The Law of Hazardous Waste: Management, Cleanup, Liability, and Litigation* § 12.01[1], at 12–6 (Susan M. Cooke ed. 1995 rev.). Its primary purpose is "to effectuate quick cleanups of hazardous waste sites." *Transtech Indus., Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1082 (D.N.J.1992), *appeal dismissed,* 5 F.3d 51 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994); *see generally* Pub.L. No. 96–510, 94 Stat. 2767 (1980) (purpose clause); *Eagle–Picher Indus. v. EPA,* 759 F.2d 922, 925–26 (D.C.Cir.1985).

When the EPA determines the release or threatened release of a hazardous substance at a site appears to warrant remedial action under CERCLA, it places the site on the NPL. 42 U.S.C. § 9605(8)(B). The EPA then administers the cleanup and related activities itself, 42 U.S.C. §§ 9604, 9606–07, or as in this case, authorizes a state agency to do so, 42 U.S.C. § 9604(d). CERCLA places the ultimate financial liability for cleanup costs on those responsible under CERCLA for the wastes. 42 U.S.C. § 9607.

As amended by SARA, CERCLA provides two causes of action under which parties can recoup some or all of their environmental response costs: (1) a cost recovery action under section 107(a), 42 U.S.C. § 9607(a), and (2) a contribution action under section 113(f), 42 U.S.C. § 9613(f). The issue in this case is whether a PRP under CERCLA is restricted to bringing a contribution claim under section 113(f) or whether it may also pursue a cost recovery action under section

terials made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(c).

107(a).[9]  Government Brief at 8;  Plaintiffs Brief at 5–6.

Section 107(a) of CERCLA imposes liability on four classes of PRPs for "all costs of removal or remedial action incurred by [government entities and] any other necessary costs of response incurred by any other person consistent with the national contingency plan."  42 U.S.C. §§ 9607(a)(4)(A) and (B). The PRPs subject to section 107(a) liability include anyone who (1) presently owns or operates a hazardous waste site, (2) owned or operated a site when hazardous material were then disposed of at the site, (3) arranged for the disposal of wastes at a site, or (4) transported wastes to a site for disposal.[10] 42 U.S.C. §§ 9607(a)(1)–(4).

Section 113(f)(1) of CERCLA provides "[a]ny person may seek contribution from any other person who is liable or potentially liable" under section 107(a).[11]  42 U.S.C. § 9613(f)(1).   In resolving contribution claims, a court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.  42 U.S.C. § 9613(f)(1); *Hatco Corp. v. W.R. Grace & Co.*, 859 F.Supp. 769, 771 (D.N.J.1994), *aff'd*, 59 F.3d 400 (3d Cir.1995); *see also Gould Inc. v. A & M Battery and Tire Serv.*, 901 F.Supp. 906, 909 (M.D.Pa. 1995).

### C.  CERCLA Limits PRPs To Actions For Contribution

▮ Most courts, including several Courts of Appeal, have limited recovery claims brought under CERCLA by a PRP to claims for contribution.  *See, e.g., United States v. Colorado & E. R.R.*, 50 F.3d 1530, 1536 (10th Cir.1995);  *United Technologies Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 103 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995);  *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764–65 (7th Cir.1994);  *In re Dant & Russell, Inc.*, 951 F.2d 246, 249–50 (9th Cir.1991);  *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989);  *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662, 680–82 (S.D.N.Y.1996);  *Dartron Corp. v. Uniroyal Chem. Co.*, 917 F.Supp. 1173, 1181 (N.D.Ohio 1996);  *Saco Steel Co. v. Saco Defense, Inc.*, 910 F.Supp. 803, 809 n. 7 (D.Me.1995);  *Plaskon Elec. Materials, Inc. v. Allied–Signal, Inc.*, 904 F.Supp. 644, 651–52 (N.D.Ohio 1995);  *New Castle County v. Halliburton NUS Corp.*, 903 F.Supp. 771, 779–80 (D.Del.1995);  *Hydro–Mfg., Inc. v. Kayser–Roth Corp.*, 903 F.Supp. 273, 275–76 (D.R.I.1995);  *Gould*, 901 F.Supp. at 912–13; *One Wheeler Rd. Assoc. v. Foxboro Co.*, 1995 WL 791937, at *7 (D.Mass. 13 Dec. 1995); *United States v. Bay Area Battery*, 895 F.Supp. 1524, 1533–34 (N.D.Fla.1995); *Reichhold Chem., Inc. v. Textron, Inc.*, 888 F.Supp. 1116, 1122–23 (N.D.Fla.1995);  *T H Agric. & Nutrition Co. v. Aceto Chem. Co.*, 884 F.Supp. 357, 361–62 (E.D.Cal.1995) ("THAN");  *Ekotek Site PRP Comm. v. Self*, 881 F.Supp. 1516, 1521 (D.Utah 1995);  *Kaufman and Broad–S. Bay v. Unisys Corp.*, 868 F.Supp. 1212, 1215 (N.D.Cal.1994);  *United States v. ASARCO, Inc.*, 814 F.Supp. 951, 956 (D.Colo.1993);  *Dravo Corp. v. Zuber*, 804 F.Supp. 1182, 1187 (D.Neb.1992), *aff'd*, 13

---

**9.**  Plaintiffs do not deny they are PRPs under section 107 of CERCLA.  *See, e.g.,* Amended Complaint, ¶ 50.

**10.**  The PRPs subject to section 107(a) liability are specifically defined as:

> (1) the owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.
> 42 U.S.C. §§ 9607(a)(1)–(4).

**11.**  Sections 107 and 113 of CERCLA work together, one governing liability and the other governing apportionment of shared liability.  *See County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1516–17 (10th Cir.1991) ("section 107(a) must be the source for any right to contribution");  *Transtech*, 798 F.Supp. at 1086.

F.3d 1222 (8th Cir.1994); *Transtech,* 798 F.Supp. at 1086–87.

All Courts of Appeal that have considered this issue agree a PRP cannot maintain a cost recovery suit under section 107(a) of CERCLA. Most recently, in *Colorado & E. R.R.,* a PRP argued the cross-claim brought against it by another PRP under section 107 of CERCLA should be treated as a contribution claim under section 113. 50 F.3d at 1534. The Tenth Circuit agreed stating that to allow one PRP to recover costs from another PRP under section 107 would eviscerate section 113. *Id.* at 1536 ("were PRPs ... allowed to recover expenditures incurred in cleanup and remediation from other PRPs under § 107's strict liability scheme, § 113(f) would be rendered meaningless"). The apportionment of costs between PRPs "is the quintessential claim for contribution." *Id. Accord United Technologies,* 33 F.3d at 101 (First Circuit determined plaintiff was also a PRP and concluded PRP's claim "must be classified as an action for contribution"); *Akzo Coatings,* 30 F.3d at 764 (Seventh Circuit held "gist of [liable party's section 107] claim is that the costs it has incurred should be apportioned equitably amongst itself and the others responsible.... That is a quintessential claim for contribution"); *In re Dant,* 951 F.2d at 249–50 (Ninth Circuit); *Amoco Oil,* 889 F.2d at 672 (Fifth Circuit).

The Third Circuit has not squarely confronted the issue sub judice; it but has implicitly accepted the position of various circuits that a cost recovery claim by a private PRP is a claim for contribution under section 113(f) of CERCLA. *See Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 89 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *see generally Transtech,* 798 F.Supp. at 1086–87; *Gould,* 901 F.Supp. at 910–11 (discussing Third Circuit CERCLA precedent regarding cost recovery).

In *Smith Land,* the owner of a site settled with the EPA and incurred cleanup costs, the recovery of which he sought in a section 107 action against the prior owner. 851 F.2d at 88. While not directly holding the action to be a section 113 claim, the Third Circuit held in addition to the three defenses listed in section 107(b), a defendant in a private CERCLA action could raise equitable defenses. *Id.* at 89. A cost recovery action under section 107, however, may only be defended as specified in section 107(b). 42 U.S.C. § 9607(b). The Third Circuit's allowance of equitable defenses in a private CERCLA action between PRPs has been recognized as a classification of a cost recovery claim by a private PRP as a section 113(f) contribution claim. *See Gould,* 901 F.Supp. at 910; *Transtech,* 798 F.Supp. at 1087.

Likewise, in *Transtech,* the EPA filed an action against the owners and operators of a site who entered into an agreement with the EPA to voluntarily initiate the cleanup. 798 F.Supp. at 1083–84. The owners and operators then sought section 107 cost recovery for the voluntary cleanup. *Id.* at 1085. The court rejected the argument that the action was a section 107 cost recovery action rather than a section 113 contribution action because the cleanup, while voluntary in the sense it was performed without court or administrative order, was the result of government threats. *Id.* at 1087; *accord Gould,* 901 F.Supp. at 910–11 ("it appears evident that when a party, who agrees to cleanup a site pursuant to a settlement agreement, sues another liable party, it is a claim for contribution and it must be distinguished from cases in which a plaintiff incurred expenses on its own initiative").

Plaintiffs intimate this reasoning allows only Federal and state governments to sue for full cost recovery under section 107(a). *See* Plaintiffs Brief at 17–20. It is clear, however, private parties can sue under section 107(a) in certain circumstances. *See Akzo Coatings,* 30 F.3d at 764; *Dartron,* 917 F.Supp. at 1181; *Kaufman,* 868 F.Supp. at 1216. For example, a neighboring landowner who incurs response costs as a result of a migration of hazardous materials from adjacent property and a PRP who can successfully assert one of the affirmative defenses enumerated in section 107(b) are "innocent" parties entitled to cost recovery for cleanup or remediation. *Id.*

### D. *Admission of Liability Is Not Dispositive*

Plaintiffs' attempt to disguise themselves as non-liable parties entitled to full cost recovery is not persuasive. The fact the ACOs and PRP agreements do not contain admissions of liability is not dispositive. *New Castle*, 903 F.Supp. at 779 ("[w]hile plaintiffs have not made a formal admission of liability, they have incurred a substantial liability in that they have agreed to incur substantial costs to clean up the landfill"); *Hydro–Mfg.*, 903 F.Supp. at 276–77 (while plaintiff argues "the Consent Decree indicates no liability, ... it is [plaintiff's] status as [one of the four types of PRPs], not the existence of the decree, which triggers [CERCLA] liability"); *see also Transtech*, 798 F.Supp. at 1086 ("a claim against one liable party by a party who voluntary [sic] agreed to perform certain actions pursuant to a settlement agreement is still a claim for contribution").[12] Plaintiffs' action to recover for their remediation obligation is a claim for contribution. *See New Castle*, 903 F.Supp. at 779.

■ A response cost recovery action under section 107(a) is available only to an innocent party, a plaintiff who does not bear CERCLA liability, for recovery from liable or potentially liable parties of all of the cleanup costs the innocent plaintiff has incurred. *See Colorado & E.R.R.*, 50 F.3d at 1536; *United Technologies*, 33 F.3d at 100; *Saco Steel*, 910 F.Supp. at 809; *Ekotek Site*, 881 F.Supp. at 1521. This limitation on PRPs has been widely accepted. *See Colorado & E. R.R.*, 50 F.3d at 1536 ("[t]here is no disagreement that both parties are PRPs ... therefore, any claim that would reapportion costs between these parties is the quintessential claim for contribution"); *Ekotek Site*, 881 F.Supp. at 1521 ("it is the plaintiff's *status* as a PRP, and not the degree of voluntariness with which it initiated cleanup activity or the settling status of other PRPs, which is controlling" in limiting plaintiff's claims to contribution) (emphasis in original).

### E. *Plaintiffs' Arguments*

Plaintiffs rely on a series of district court cases which expressly allowed private PRPs to bring section 107 claims against other PRPs. *See, e.g., Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, 891 F.Supp. 221, 224 (E.D.Pa.1995); *Transportation Leasing Co. v. California*, 861 F.Supp. 931, 937–38 (C.D.Cal.1993);[13] *Companies for Fair Allocation v. Axil Corp.*, 853 F.Supp. 575, 579 (D.Conn.1994); *City of North Miami v. Berger*, 828 F.Supp. 401, 407 n. 7 (E.D.Va.1993); *Barton Solvents, Inc. v. Southwest Petro–Chem, Inc.*, 1993 WL 382047, at *4–5 (D.Kan. 14 Sept. 1993);[14] *Charter Township of Oshtemo v. American Cyanamid Co.*, 1993 WL 561814, at *2 (W.D.Mich. 19 Aug. 1993), *reconsideration denied*, 910 F.Supp. 332 (1995); *United States v. Kramer*, 757 F.Supp. 397, 416 (D.N.J.1991).[15]

---

**12.** Plaintiffs argue that allowing a private party who voluntarily remediates a site to bring a cost recovery action under section 107(a) promotes the important CERCLA policy of encouraging the voluntary cleanup of hazardous waste sites. Plaintiffs Brief at 16. Plaintiffs contend that a private liable party will be more likely to initiate a cleanup on its own if it knows it will have the opportunity to gain a windfall by recovering all of its costs, including costs properly attributable to itself, under section 107(a). *Id.* at 6. Under this theory, CERCLA would unfairly benefit a PRP who has access to cash and is willing to front load cleanup costs for an opportunity to be indemnified in a cost recovery action. This windfall incentive is, however, illusory. *See Kaufman*, 868 F.Supp. at 1215 n. 2.

Although a party who had voluntarily cleaned up a site would initially be able to recoup all of its costs from other responsible parties under section 107(a), the other liable parties could compel it to pay its *pro rata* share by bringing

contribution actions against it under section 113(f). "Any windfall would be ephemeral and provide no real incentive." *Id.* The Government argues a settling PRP receives a different type of windfall, a windfall of reduced litigation expenses and the avoidance of civil penalties and damage suits initiated to enforce cleanup orders. Government Reply Brief at 13–14.

**13.** The *Transportation Leasing* opinion is at odds with the Ninth Circuit's opinion in *In re Dant*.

**14.** The Tenth Circuit's opinion in *Colorado & E. R.R.* contravenes the outcome reached in *Barton Solvents*.

**15.** Plaintiffs rely heavily on *Kramer*. Plaintiffs Brief at 12–14. Recent precedent from this Circuit and this district court do not follow *Kramer*. *See Smith Land*, 851 F.2d at 89; *Transtech*, 798 F.Supp. at 1086–87; *see also New Castle*, 903 F.Supp. at 779–80; *Gould*, 901 F.Supp. at 912–

Almost all of these cases, however, focus on the "any other person" language of section 107(a)(4)(B) in reasoning private PRPs can maintain a suit against other PRPs under section 107(a) of CERCLA. *See Bethlehem Iron Works,* 891 F.Supp. at 225; *Companies for Fair Allocation,* 853 F.Supp. at 579; *Barton Solvents,* 1993 WL 382047, at *3; *Charter Township,* 1993 WL 561814, at *1–2; *Transportation Leasing,* 861 F.Supp. at 936. While a PRP qualifies as "any other person" under section 107(a)(4)(B), when a private PRP sues another PRP it is still looking to apportion liability between culpable parties. *Akzo Coatings,* 30 F.3d at 764; *Bay Area Battery,* 895 F.Supp. at 1533; *Ekotek Site,* 881 F.Supp. at 1521. The suit is therefore an action for contribution governed by section 113(f). *Id.* The cases cited by Plaintiffs fail to recognize this basic point.[16]

Plaintiffs' further reliance on the United States Supreme Court's decision in *Key Tronic Corp. v. United States* and the Third Circuit's opinion in *Hatco Corp. v. W.R. Grace and Co.* is misplaced. The *Key Tronic* decision focused on whether attorney's fees are a necessary cost of response within a section 107 action. — U.S. ——, ——, 114 S.Ct. 1960, 1967, 128 L.Ed.2d 797 (1994). While the decision held an implied cause of action exists for private parties under section 107 of CERCLA, *Id.* at ——, 114 S.Ct. at 1966, it did not address, nor was the Court asked to address, the issue of whether a private PRP could bring a section 107 action. The district court opinion confirms the issue of joint and several liability imposed by section 107(a) was not before the court. *Key Tronic Corp. v. United States,* 766 F.Supp.

865, 868 n. 1 (E.D.Wash.1991) ("[b]ecause the parties have stipulated to the quantum of liability for these items, the court will address solely the legal issue of recoverability of these items").

In *Hatco,* the Third Circuit considered issues involving the interpretation of a 1978 sales contract provision and entitlement to a jury trial in actions brought under sections 107 and 113 of CERCLA. 59 F.3d 400, 403–04 (3d Cir.1995). The court did not address, nor was it asked to address, the issue of whether a private PRP could bring a section 107 action. The opinion itself indicates the basis for liability did not affect the Third Circuit's deliberations. *See id.* at 410 ("[i]n the circumstances here, it is of no practical importance whether Grace's obligation to clean up the site would be imposed by CERCLA, another [F]ederal statute, the common law, or a New Jersey statute"). Plaintiffs, as admitted PRPs, are not "innocent parties" and cannot maintain a section 107(a) cost recovery action.

## F. *Natural Resource Damages*

CERCLA authorizes recovery of "damages for injury to, destruction of, or loss of natural resources." 42 U.S.C. § 9607(a)(4)(C). Only the Federal government or an authorized representative of a state has standing to bring an action for natural resource damages recovery under section 107(a)(4)(C). 42 U.S.C. § 9607(f)(1) ("[t]he President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages"); *Borough of Rockaway v. Klockner &*

---

13. The *Kramer* opinion has also received caustic review from courts outside of this Circuit. *See, e.g., THAN,* 884 F.Supp. at 361; *Kaufman,* 868 F.Supp. at 1215 n. 2. For example, the *THAN* court stated, in pertinent part:

> The *Kramer* court held that "section 107 permits a PRP ... to collect all its response costs, even those that the same PRP may be required to pay back to other PRPs as its equitable share in a section 113 proceeding." 757 F.Supp. at 416. The reason for allowing this temporary "windfall" was to "serve[] as an incentive for private parties to clean up hazardous waste sites, knowing that by then prevailing in a section 107 action, they will be reimbursed perhaps in excess of what might be

shown in a section 113 action to have been their equitable share." *Id.* at 416–17. All that the *Kramer* opinion actually accomplishes is another round of litigation—as defendant PRPs counterclaim against the plaintiff PRP to effectuate their recovery. Such an approach guarantees inefficiency, potential duplication, and prolongation of the litigation process in a CERCLA case.

884 F.Supp. at 361.

16. Plaintiffs' "expansive reading" of the "any other person" language in section 107(a) is also untenable because "carried to its logical extreme, such a reading would completely swallow [section 113]." *United Technologies,* 33 F.3d at 101.

*Klockner,* 811 F.Supp. 1039, 1049–50 (D.N.J. 1993); *see also City of Heath v. Ashland Oil, Inc.,* 834 F.Supp. 971, 977 (S.D.Ohio 1993); *City of Toledo v. Beazer Materials and Servs., Inc.,* 833 F.Supp. 646, 651–52 (N.D.Ohio 1993); *Town of Bedford v. Raytheon Co.,* 755 F.Supp. 469, 472–75 (D.Mass. 1991); *City of Philadelphia v. Stepan Chem. Co.,* 713 F.Supp. 1484, 1489–90 (E.D.Pa. 1989). A municipality or other political subdivision of a state is not an authorized representative unless specifically appointed by the governor of the state. 42 U.S.C. § 9607(f)(2)(B) ("[t]he Governor of each State shall designate State officials who may act on behalf of the public as trustees for natural resources under this chapter"); *Borough of Rockaway,* 811 F.Supp. at 1049; *see also City of Heath,* 834 F.Supp. at 977; *City of Toledo,* 833 F.Supp. at 652; *Town of Bedford,* 755 F.Supp. at 472; *City of Philadelphia,* 713 F.Supp. at 1489.

■ Plaintiffs voluntarily dismissed claims in Count I concerning natural resource damages with respect to all defendants. *See* Stipulation. A plaintiff who lacks standing to bring an action for natural resource damages recovery also lacks standing to bring an action for declaratory judgment regarding liability for future natural resource damages recovery. *See generally Borough of Rockaway,* 811 F.Supp. at 1049–50; *see also City of Heath,* 834 F.Supp. at 977; *City of Toledo,* 833 F.Supp. at 652; *Town of Bedford,* 755 F.Supp. at 472, 475. Plaintiffs do not allege, individually or collectively, they have been appointed as authorized representatives by the governor of the State of New Jersey.[17] All derivative claims for declaratory relief relating to natural resource damages in Count III must therefore be dismissed.

*Conclusion*

For the reasons set forth above, the Motion for Judgment is granted. Count I and derivative claims involving section 107 of CERCLA, 42 U.S.C. §§ 9607(a), in Count III of the Amended Complaint are dismissed with respect to all defendants. Derivative claims for declaratory relief relating to natu-

ral resource damages in Count III of the Amended Complaint are also dismissed with respect to all defendants.

---

17. Plaintiffs did not address this portion of the Government's motion in their brief and did not submit any arguments contesting the Government's position.