SC HOLDINGS, INC., Plaintiff,

v.

A.A.A. REALTY CO. et al., Defendants.

A.A.A. REALTY CO. et al.,
Third–Party Plaintiffs,

v.

ALUMINUM COMPANY OF AMERICA
et al., Third–Party Defendants.

Civ. No. 95–0947 (GEB).

United States District Court,
D. New Jersey.

Aug. 16, 1996.

Alan V. Klein, Saul, Ewing, Remick & Saul, Princeton, NJ, for SC Holdings, Inc.

Keith N. Leonard, Leonard, Tillery & Sciolla, Moorestown, NJ, for A.A.A. Realty Company, Meredith Paving Corp.

Sandford F. Schmidt, Law Offices of Sandford F. Schmidt, Medford, NJ, for ACR Inc. of South Jersey.

Gail Hokanson Allyn, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for AFG Industries, The Dial Corp.

Joel Schneider, Archer & Greiner P.C., Haddonfield, NJ, for Aldan Rubber Co., Hercules, Inc.

Kenneth Michael Denti, Duane, Morris & Heckscher, Cherry Hill, NJ, for Allied Signal, Inc.

Samuel H. Israel, Fox, Rothschild, O'Brien and Frankel, Lawrenceville, NJ, for Atlantic Metals Corp.

John Frederick Semple, Sterns & Weinroth, a Professional Corporation, Trenton, NJ, for BOC Group, Inc.

William C. Foster, Kelly, McLaughlin & Foster, Philadelphia, PA, for Budd Co.

Ralph R. Smith, Pepper, Hamilton & Scheetz, Westmont, NJ, for Cabot Corp., SKF USA, Inc.

Terrie–Anne Duda, Levin & Hluchan, Voorhees, NJ, for Campbell Soup Co., Megtom, Inc., Myles Transportation Co., TNT Equipment Sales & Rentals, Inc.

Dolores E. Lusa, Consolidated Rail Corporation, Philadelphia, PA, for Consolidated Rail Corporation.

Robert L. Gambell, Cherry Hill, NJ, for Deb Maintenance, Inc., Ramfab, W & K Welding and Tank Erectors, Inc.

Mark Leslie First, Reed, Smith, Shaw & McClay, Princeton, NJ, for Del Val–Ink & Color, Inc., Homet Realty Co.

Lila Wynne Williams, Margolis Edelstein, Westmont, NJ, for Delaware Valley Scrap Company.

Howard A. Matalon, Latham & Watkins, Newark, NJ, for Ford Electronics & Refrigeration Corp., Ford Motor Company, Georgia Pacific Corp.

Marilyn Heffley, Reed Smith Shaw & McClay, Philadelphia, PA, for General Electric Co.

Gerald A. Hughes, Hughes & Hendrix, PC, Trenton, NJ, for Industrial Trucking Service Corp.

David A. Christie, Jr., Wolff, Helies, & Duggan, PC, Red Bank, NJ, for Kasper Brothers, Inc.

Theresa A. Chmara, Jenner & Block, Washington, DC, for Mobile Dredging & Pumping Co.

William C. Popjoy, III, Gercke, Dumser & Feld, Cherry Hill, NJ, for Modern Way Refuse Container Service Inc.

David Joseph D'Aloia, Saiber Schlesinger Satz & Goldstein, Newark, NJ, for National Casein Company of New Jersey, Tenn. Gas Pipeline.

David Paul Schneider, Bressler, Amery & Ross, PC, Florham Park, NJ, for Owens–Corning Fiberglas, Inc.

Thomas F. Quinn, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, NJ, for Portfolio One, Inc.

Granville D. Magee, Magee & Pagano, Wall Township, NJ, for Triple G. Coatings, Inc.

David F. Michelman, Blackburn & Michelman, Cherry Hill, NJ, for Twentieth Century Refuse Removal.

Robert P. Avolio, Avolio & Hanlon, P.C., Trenton, NJ for Inductotherm Corporation.

## MEMORANDUM OPINION

BROWN, District Judge.

■ This matter comes before the Court on the motion of defendants, A.A.A. Realty Co., Atlantic Metals Corp., The Budd Company, Consolidated Rail Corporation, Deb Maintenance, Inc., Ford Motor Company, Ford Electronics and Refrigeration Corp., Georgia–Pacific Corporation, Hercules Inc., Hoeganaes Corp., Inductotherm Corp., Kasper Brothers, Inc., Meredith Paving Corp., Mobile Dredging & Pumping Co., National Casein Company of New Jersey, RAMFAB, Simon Wrecking Co., Inc., SKF USA, Inc., Tenneco, Inc. a/k/a/ Tennessee Gas Pipeline Co., Triple G. Coatings, Inc., Twentieth Century Refuse Removal Company, Inc., and W & W Welding and Tank Erectors, Inc. to dismiss certain counts of the above-captioned action against them pursuant to FED.R.CIV.P. 12(b)(6). Also before the Court are the motions of certain third-party defendants ("moving third-party defendants") to dismiss several of the third-party claims against them pursuant to FED.R.CIV.P. 12(b)(6). Additionally, the United States has moved for leave to file a response to the moving third-party defendants' motion to dismiss.[1] For the reasons set forth in this Memorandum Opinion, the Court will grant defendants' motion to dismiss,[2] deny the moving third-party defendants' motion to dismiss, and stay those third-party claims.

## I. BACKGROUND

This litigation concerns allocation of remediation costs for a contaminated area of land covering approximately 400 acres in Cinnaminson and Delran Townships in Burlington County, New Jersey ("the Site"). Plaintiff SC Holdings Inc. ("SCH") currently owns approximately 136 acres of that land, on which there is a landfill, as the successor-in-interest to Sanitary Landfill, Inc. ("SLI") after an acquisition in 1993. Third Amended Complaint ¶¶ 5–6. SCH is a wholly owned subsidiary of Waste Management, Inc.

Before SLI acquired the property through a series of purchases between 1962 and 1985, Lockhart Construction Company operated a sand and gravel quarry there. *Id.* ¶¶ 6–7. Between 1962 and 1980, the landfill accepted a variety of municipal and industrial wastes, including hazardous substances. *Id.* ¶¶ 3–10. Mining operations on the Site continued until the late 1960s. *Id.* ¶ 8. During the 1970s, the New Jersey Department of Environmental Protection ("NJDEP") cited SLI on several occasions for violations of state landfill regulations. By September 1980, NJDEP issued an Administrative Order to SLI to close the landfill and, on October 15, 1984, approved an NJDEP Administrative Consent Order requiring SLI to implement closure of the landfill. *Id.* ¶ 12. On October 27, 1980, the New Jersey Superior Court, Chancery Division, Burlington County ordered SLI to close the landfill. Thereafter, site assessments confirmed the presence of groundwa-

---

1. The Court will grant the United States' motion for leave to file a response to the moving third-party defendants' motion to dismiss. The United States' motion is unopposed, the United States has demonstrated good cause for its dilatoriness in filing the response, and its position on the issues presented in the third-party defendants' motion is significant because the United States is ultimately responsible for enforcing cleanups under CERCLA. *See* Motion for Leave to File Reply by Bret R. Williams on behalf of the United States Department of Justice ¶¶ 3–4 (April 29, 1996).

2. A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) must be filed *before* a defendant files a responsive pleading. *Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991). In contrast, a motion for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c) may be filed after the pleadings are closed. *Turbe*, 938 F.2d at 428. Because the instant motion to dismiss was filed *after* defendant had already filed an answer, this motion must be considered under Rule 12(c). However, this conclusion is merely one of procedure because the Third Circuit has held that a dismissal under Rule 12(c) employs the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe*, 938 F.2d at 428 (citations omitted).

ter contamination in the area of the landfill. *Id.* ¶ 15.

In June 1984, the United States Environmental Protection Agency ("EPA") placed the Site on the National Priorities List ("NPL"). *Id.* ¶ 14. In 1985, the EPA initiated a remedial investigation to determine the source, nature and extent of the groundwater contamination. Id. ¶ 17. The EPA concluded that the groundwater beneath the Site was contaminated with hazardous substances, and that "the SLI Landfills were the major source of groundwater contamination" at the Site. *Id.* ¶¶ 15–17. *See* Affidavit of Kristine O'Connor, Exh. 1 ¶ 39. A remedial investigation and feasibility study determined that several of the industries on the Site may have contributed to the groundwater contamination. Third Amended Complaint ¶ 20. The EPA issued a Record of Decision ("ROD") on September 28, 1990 embodying EPA's chosen remedy for the first operable unit at the Site. *Id.* ¶ 21. The ROD required the extraction and treatment of contaminated groundwater from deep and shallow aquifiers, reinjection of treated groundwater into the deep aquifiers, and installation of additional wells to insure that the remedy was effective. *Id.*

In December 1990, the EPA asked SCH and other defendants in this action, including Allied Signal. Inc., Atlantic Metals Corp., Del Val Ink & Color Inc., Ford Motor Co., Hoe-

ganaes Corp., Tenneco Inc. and Twentieth Century Refuse Removal Co., to undertake response action at the Site. SCH alleges that it was the only PRP that complied with the EPA's request. After extensive negotiations, SCH and the EPA agreed upon the scope of response activities, and on June 28, 1991 produced a Unilateral Administrative Order ("UAO") under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675.[3] SCH also agreed to reimburse the EPA for over $3 million in past EPA response costs. SLI/SCH alleges that it has incurred over $10 million in costs in responding to the release or threatened release of hazardous substances, including reimbursing the EPA's costs, remedial action undertaken pursuant to the EPA's June 28, 1991 UAO, investigation costs, and costs incurred in capping the landfill, installing a ventilation system, implementing a groundwater monitoring program, and erosion control. Second Amended Complaint ¶ 25.

On February 27, 1995, SCH filed the instant action seeking recovery of all or part of the money it has expended in remediating the site. Count I of the Complaint seeks relief jointly and severally against all defendants pursuant to section 107 of CERCLA, 42 U.S.C. § 9607(a).[4] *Id.* ¶¶ 86–96. Count II seeks relief against all defendants for con-

---

**3.** SCH states that SLI and its contractors are currently undertaking the remedial design of the action mandated in the ROD, pursuant to the June 28, 1991 UAO. Third Amended Complaint ¶ 23.

**4.** More specifically, plaintiff asserts that: (1) defendants A.A.A. Realty Co., AFG Industries, BOC Group, Consolidated Rail Co., Deb Maintenance, Del Val–Ink & Color, Hoeganaes Corp., Homet Realty Company, Megtom, Meredith Paving Corp., Myles Transportation Co., Ramfab, TNT Equipment Sales and Rentals, and W & K Welding and Tank Erectors are liable pursuant to section 107(a)(1) or 107(a)(2) of CERCLA as "owner and operator" defendants, *see* Second Amended Complaint ¶¶ 27–40; (2) defendants Aldan Rubber Company, Allied–Signal, Anzon, Atlantic Metals Corp., BOC Group, Budd Company, Cabot Corp., Campbell Soup Co., Classic Chemicals, Del Val–Ink & Color, Dial Corp., Ford Electronics and Refrigeration Corp., Ford Motor Company, General Electric Company,

Georgia Pacific Corporation, Triple G Coatings, Hercules Inc., Hoeganaes Corp., Inductotherm Corp., Levitz Furniture Corp., Meredith Paving Corp., Methode Electronics, Inc.–East, Nadla Corp., National Casein Company of New Jersey, NL Industries, Owens–Corning Fiberglas, Inc., Portfolio One, Rulon Co., Simon Wrecking Co., SKF USA, Inc., Superior Paint and Varnish, Inc., Tenneco, Inc., United States Department of the Army, are liable pursuant to section 107(a)(3) of CERCLA as "generator or arranger" defendants, *see* Second Amended Complaint ¶¶ 41–73; and (3) defendants ACR, Inc. (a/k/a "Atlantic Disposal Services"), Delaware Valley Scrap Co., Georgia Pacific Corp., Giordano Waste Material Co., Industrial Trucking Service Corp., Kasper Brothers Inc., Mobile Dredging and Pumping Co., Modern W Service, Inc., Portfolio One, SKF USA, Inc., Twentieth Century Refuse Removal Co., Inc., and United Disposal Systems, are liable pursuant to section (a)(4) of CERCLA as "transporter" defendants. *See* Second Amended Complaint ¶¶ 74–85. *See also id.* ¶¶ 90–92.

tribution pursuant to section 113(f) of CERCLA. *Id.* ¶¶ 97–100. Count III asserts that defendants are strictly liable, jointly and severally, for all cleanup costs plaintiff incurred, pursuant to N.J.S.A. 58:10–23.11g(c)(1). *Id.* ¶¶ 101–05. Count IV alleges that defendants are strictly liable, jointly and severally, for contribution costs under the New Jersey Spill Act, N.J.S.A. 58:10–23.11f(a)(2). *Id.* ¶¶ 106–10. Count V asserts a common law strict liability claim against the "generator or arranger" defendants as listed *supra* at note 4, alleging that those defendants generated abnormally dangerous materials and thereby participated in an abnormally dangerous activity. *Id.* ¶¶ 111–15. Count VI seeks relief against all defendants under the common law theory of unjust enrichment. *Id.* ¶¶ 116–18. Finally, Count VII seeks contribution from all defendants pursuant to the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A–2 and N.J.S.A. 2A:53A–3. *Id.* ¶¶ 119–22. The Court has jurisdiction over Counts I and II of the Third Amended Complaint pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367.

Defendants now move to dismiss Counts I, III, V, VI and VII of the Third Amended Complaint.[5] Defendants contend that Counts I and III must be dismissed because plaintiff, as a responsible party under CERCLA, cannot maintain an action for joint and several liability under section 107 of CERCLA or N.J.S.A. 58:10–23.11g(c)(1) of the Spill Act, but instead may seek only contribution pursuant to section 113(f) of CERCLA and N.J.S.A. 58:10–23.11f(a)(2). Defendants argue that Count V must be dismissed because it is time-barred and because New Jersey law does not allow joint tortfeasors such as SCH to maintain a common law action for strict liability in tort, and that Count VI must be dismissed because an unjust enrichment claim is not cognizable when the claimant has an independent obligation to undertake the activity forming the gravamen of its claim. Finally, defendants seek dismissal of Count VII, insisting that plaintiff has not satisfied the elements of a claim under the Joint Tortfeasors Contribution Act.

In support of their motion to dismiss, the moving third-party defendants contend that the claims defendants assert against them under section 113(f) and N.J.S.A. 58:23–11f(a)(2) must be dismissed because liability under those statutes is only several, therefore requiring defendants to pay only their individual share of the remediation costs to plaintiff. The moving third-party defendants thus reason that defendants are not entitled to contribution from them. Since the moving third-party defendants filed this motion to dismiss in lieu of an answer, this motion is properly considered pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. STANDARDS FOR DISMISSAL

■ This Court will grant a motion for judgment on the pleadings pursuant to FED. R.CIV.P. 12(c) only if the movant establishes that there are no material issues of fact and that he is entitled to judgment as a matter of law. FED.R.CIV.P. 12(c). *See Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97 n. 4 (3d Cir.1986). For purposes of the motion, the Court looks to the non-moving party's pleadings and takes as true all well-pleaded factual allegations and all reasonable inferences therefrom. *See Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1058 (3d Cir.1980).

■ A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986); *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). The Court may not dismiss a complaint unless plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2

---

**5.** Plaintiff has amended its Complaint twice since filing this motion. The amendments are inconse-

quential to this instant motions, because the counts remain the same.

L.Ed.2d 80 (1957); *Angelastro,* 764 F.2d at 944. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In setting forth a valid claim, a party is required only to plead "a short plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a).

## B. COUNT I: RECOVERY CLAIM UNDER SECTION 107 OF CERCLA

### 1. *Overview of CERCLA Liability*

Congress enacted CERCLA in 1980 "[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, Stat. 2767 (1980). The primary purpose of CERCLA is "to effectuate quick cleanups of hazardous waste sites." *Transtech Indus. Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1082 (D.N.J. 1992), *appeal dismissed,* 5 F.3d 51 (3d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994). *See also Borough of Sayreville v. Union Carbide Corp.,* 923 F.Supp. 671, 676 (D.N.J.1996) (quoting *Transtech* ).

As stated in *United States v. Kramer,* 757 F.Supp. 397 (D.N.J.1991):

> "Congress was aware when it enacted CERCLA that the costs of cleanup would exceed the Fund established by section 221 of the statute. *See, e.g.,* S.Rep. No. 848, *reprinted in* 1 Legis.Hist. at 325. Thus, dollars expended by the federal and state governments to clean up hazardous waste sites are, whenever possible, to be recovered from responsible parties through the liability scheme ... set forth in section 107. 42 U.S.C. § 9607. Section 107 imposes liability on present site owners and operators, owners and operators at the time of disposal, and specified categories of generators and transporters of hazardous substances."

*Id.* at 410 (quoting *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1445 (W.D.Mich. 1989)).

There are four classes of potentially responsible parties, as follows:

(1) the owner and operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, ....

42 U.S.C. § 9607(a)(1)–(a)(4).

Section 107(a) renders all four of these classes of potentially responsible parties ("PRPs") liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe" [42 U.S.C. § 9607(a)(4)(A) ], as well as "any other necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a)(4)(B). Liability pursuant to section 107(a) of CERCLA attaches if the four following elements are met: "(1) the defendant falls into one of the four categories of 'responsible parties'; (2) the hazardous substances are disposed of at a 'facility'; (3) there is a 'release' or threatened release of hazardous substances from the facility into the environment; (4) the release caused the incurrence of [necessary] 'response costs.'" *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 258–59 (3d Cir.1992).

Although section 107(a) did not expressly create a private cause of action, federal district courts have been virtually unanimous in holding that section 107(a)(4)(B) impliedly

created a private cause of action for response costs. *Key Tronic Corp. v. United States,* 511 U.S. 809, —— n. 7, 114 S.Ct. 1960, 1965 n. 7, 128 L.Ed.2d 797 (1994) (citation omitted). However, the existence of a CERCLA-implied right of contribution via section 107 was clouded by the repeated refusal of the Supreme Court of the United States to find such an implied right of contribution in other statutes. *See United Technologies Corp. v. Browning–Ferris Industries, Inc.,* 33 F.3d 96, 100 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995).

Not surprisingly, therefore, the Superfund Amendments and Reauthorization Act ("SARA") amendments to CERCLA in 1986, 42 U.S.C. §§ 9601–9675, included a cause of action for contribution. 42 U.S.C. § 9613(f). *See Key Tronic Corp.,* 511 U.S. at ——, 114 S.Ct. at 1966. Section 113(f)(1) of CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable" under section 107(a). 42 U.S.C. § 9613(f)(1). Section 113(f) was apparently intended to "clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985).

In short, CERCLA as amended by SARA provides two distinct types of legal actions by which parties can recoup some or all of their costs associated with hazardous waste cleanup: (1) cost recovery actions under section 107(a) and section 112(g)(2); and (2) contribution actions under section 113(f). *United States v. Colorado & Eastern Railroad Co,* 50 F.3d at 1534–35. The issue in this case is whether the relief that a PRP may seek under CERCLA is limited to a contribution claim under section 113(f) or whether the PRP may also pursue a cost recovery action under section 107(a), thereby holding other PRPs jointly and severally liable.

2. *CERCLA Limits PRPs to Contribution Claims under Section 113*

■ Most courts confronting this issue have limited cost recovery claims brought by a PRP to section 113. The majority rule is that parties that are liable for at least some of the response costs incurred in remediating a site, such as SCH, are limited to the contribution scheme under section 113(f). *See, e.g., Control Data Corp. v. S.C.S.C. Corp.,* 53 F.3d 930 (8th Cir.1995); *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1536 (10th Cir.1995); *United Tech. Corp. v. Browning–Ferris Indus., Inc.,* 33 F.3d 96, 103 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764–65 (7th Cir.1994); *In re Dant & Russell, Inc.,* 951 F.2d 246, 249–50 (9th Cir.1991); *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989); *Borough of Sayreville v. Union Carbide Corp.,* 923 F.Supp. 671, 678 (D.N.J.1996); *Town of New Windsor v. Tesa Tuck, Inc.,* 919 F.Supp. 662, 671 (S.D.N.Y. 1996); *Dartron Corp. v. Uniroyal Chem. Co.,* 917 F.Supp. 1173, 1182 (N.D.Ohio 1996); *Sun Co., Inc v. Browning–Ferris, Inc.,* 919 F.Supp. 1523 (N.D.Okla.1996); *Reynolds Metals Co. v. Arkansas Power & Light Co.,* 920 F.Supp. 991 (E.D.Ark.1996); *Saco Steel Co. v. Saco Defense, Inc.,* 910 F.Supp. 803, 809 n. 7 (D.Me.1995); *Plaskon Elec. Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644, 651–52 (N.D.Ohio 1995); *New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771, 779–80 (D.Del.1995); *Gould Inc. v. A & M Battery and Tire Service,* 901 F.Supp. 906, 909–12 (M.D.Pa.1995); *Hydro–Mfg., Inc. v. Kayser–Roth Corp.,* 903 F.Supp. 273, 275–76 (D.R.I.1995); *One Wheeler Road Assoc. v. Foxboro Co.,* 1995 WL 791937, at *7 (D.Mass. Dec. 13, 1995); *TH Agric. & Nutrition Co. v. Aceto Chem. Co.,* 884 F.Supp. 357, 361–62 (E.D.Cal.1995); *Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516, 1521 (D.Utah 1995); *Kaufman and Broad–South Bay v. Unisys Corp.,* 868 F.Supp. 1212, 1215 (N.D.Cal.1994); *United States v. ASARCO, Inc.,* 814 F.Supp. 951, 956 (D.Colo.1993); *Dravo Corp. v. Zuber,* 804 F.Supp. 1182, 1187 (D.Neb.1992), *aff'd,* 13 F.3d 1222 (8th Cir. 1994); *Transtech,* 798 F.Supp. at 1086–87.

These courts generally have held that while a public policy rationale exists for im-

posing joint and several liability under certain circumstances, such as an action for recoupment of response costs by the government or an innocent party, the objectives underlying CERCLA and its statutory scheme do not warrant further expansion of section 107. *See United Technologies,* 33 F.3d at 100; *Folino v. Hampden Color and Chem Co.,* 832 F.Supp. 757, 763–64 (D.Vt. 1993). *"United Technologies* clearly holds that only innocent parties may bring cost recovery actions.... Thus, any and all responsible parties ... are confined to bringing actions under § 9613(f)." *Kaufman and Broad–South Bay,* 868 F.Supp. at 1215. *See also Colorado & Eastern R.R. Co.,* 50 F.3d at 1534–36 (claim by PRP against another PRP must be considered contribution claim governed by section 113(f)); *Plaskon Electronic Materials,* 904 F.Supp. at 651–52 (noting that First, Fifth, Seventh and Tenth Circuits have all ruled that claims by one PRP against another must be brought pursuant to section 113(f)).

The Third Circuit has not squarely confronted this issue. However, in *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86 (3d Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989), the Third Circuit rejected plaintiff's argument that the defenses enumerated in section 107(b) are exclusive of those in section 113(f)(2) and allowed defendant to raise equitable defenses, because the court found that section 107 is inextricably linked with section 113. *Id.* at 89. As the court noted in *Borough of Sayreville,* "[t]he Third Circuit's allowance of equitable defenses in a private CERCLA action between PRPs has been recognized as a classification of a cost recovery claim by a private PRP as a section 113(f) contribution claim." *Borough of Sayreville,* 923 F.Supp. at 678 (citing *Gould Inc. v. A & M Battery and Tire Service,* 901 F.Supp. 906, 909 (M.D.Pa.1995); *Transtech,* 798 F.Supp. at 1087).[6]

Indeed, the court in *Transtech* relied on *Smith Land* in addressing a similar issue. In that case, the plaintiffs were a group of PRPs that sought recovery of costs incurred in remediating a landfill after an action filed by the EPA. *Id.* at 1083–84. Plaintiffs asserted that their claim was one for cost recovery pursuant to section 107, not for contribution, and therefore not subject to defendants' section 113(f) equitable defenses. *Id.* at 1085. Rejecting plaintiffs' argument, the court held that because the suit was brought by one liable party against another, it was actually an action for contribution. *Id.* ("Without this statutory language [section 113(f)] which plaintiffs seem to write away with their argument it is unclear whether they would have a CERCLA cause of action at all."). The court then reconciled sections 107 and 113 as follows:

> [P]laintiff's 107(a) action against defendants is authorized by section 113(f)(1)'s contribution provisions, for precisely the reason that plaintiffs articulate the need for this action. In fact when properly construed, the two sections work together, one governing liability and the other governing contribution from those found liable. First, the plaintiff must show that the defendant has incurred section 107(a) liability. Then, it can sue for contribution under section 113(f)(1).

*Id.* at 1086. *See also Gould,* 901 F.Supp. at 910–11 ("it appears evident that when a par-

---

6. The United States notes in its response brief that the Third Circuit's decision in *Smith Land* should not be construed so broadly as to allow all conceivable equitable defenses to liability for contribution. Brief of United States in Response to Third–Party Defendants' Motion to Dismiss at 5–6. The United States asserts that in terms of liability, section 107 allows only those equitable defenses available under section 113. *Id.* at 5. The Court need not resolve this issue to rule on the motions to dismiss, although it bears noting that the United States' position has merit. The Third Circuit stated as follows:

> Doctrines such as caveat emptor and "clean hands," which in some cases could bar relief

regardless of the degree of culpability of the parties, do not comport with congressional objectives [underlying CERCLA].... We conclude, therefore, that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may be considered in mitigation of amount due.

*Smith Land,* 851 F.2d at 90. *See also Thaler v. PRB Metal Products, Inc.,* 815 F.Supp. 99, 101 (E.D.N.Y.1993) (the only substantive affirmative defenses to liability under CERCLA are those in section 107(b)), *aff'd,* 28 F.3d 102 (2d Cir.1994); *United States v. Price,* 577 F.Supp. 1103, 1114 (D.N.J.1983).

ty, who agrees to cleanup a site pursuant to a settlement agreement, sues another liable party, it is a claim for contribution and it must be distinguished from cases in which a plaintiff incurred expenses at its own initiative").

Subsequent decisions within this district have followed the persuasive reasoning in *Transtech. See, e.g., Borough of Sayreville,* 923 F.Supp. at 677–78; *Ciba–Geigy Corp. v. Sandoz Ltd.,* Civ. No. 92–4491, 1993 WL 668325, at *6–7 (D.N.J. June 17, 1993); *General Electric Co. v. Buzby Bros. Materials Corp.,* Civ. No. 87–4263, at 8, 26 (D.N.J. June 20, 1996); *Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.,* Civ. No. 94–3531, at 32–33 (D.N.J. April 22, 1996). *See also PVO Internat'l Inc. v. Drew Chem. Corp.,* Civ. No. 87–3921, 1988 WL 160042, at *19 (D.N.J. June 27, 1988).[7] In *Ciba–Geigy,* the court granted defendants' motion to dismiss plaintiff's cost recovery claims under section 107. The court ruled that although CERCLA clearly intended that government authorities could bring an action under section 107(a), private parties seeking cost recovery must proceed under the contribution provisions of section 113. *Id.* The court stated as follows: "Congress reacted to the uncertainty regarding a PRP's right to seek contribution by enacting § 113(f) for it a PRP could have already recovered its full response costs under § 107(a), there would have been no need to authorize a PRP to recover a portion of its expenses in contribution." *Id.* at *6 (citing *Transtech Indus.,* 798 F.Supp. at 1084). The *Ciba–Geigy* court thus concluded that a contrary reading of CERCLA's provisions to allow a liable party to seek to recover all of its costs under a "joint and several" liability theory would result in duplicative, unnecessary and unfair litigation:

> [A]llowing a non-governmental PRP to recover its entire response costs under § 107(a) from another PRP would be both procedurally unwieldy and substantively unfair. Allowing a non-governmental PRP to recover all its response costs would force a defendant to then sue for contribution under § 113(f) from an original plaintiff. In a case involving multiple PRPs, this could result in a chain reaction of multiple, and unnecessary lawsuits. Allowing full recovery up front would also provide an unjustified windfall for the party who filed the first lawsuit. For example, if two PRPs jointly cleaned up a site, and one or both believe that it had incurred in excess of its entire response costs, thus forcing the other to sue it in contribution to re-recover its fair share. The Court sees no justification for such a procedure in the context of commercial, non-governmental PRPs.

*Id.* at *7.

I find the reasoning underlying the majority rule, as expressed in *Transtech* and subsequent decisions, to be persuasive. Because SCH is a responsible party under CERCLA it cannot, as a matter of law, maintain a claim for relief under section 107(a) of CERCLA. *See Borough of Sayreville,* 923 F.Supp. at 678; *General Electric Co. v. Buzby Bros. Materials Corp.,* Civ. No. 87–4263, at 8, 26 (D.N.J. June 20, 1996). Instead, SCH may proceed only under the contribution provision in section 113(f)(1) of CERCLA, as pleaded in Count II of the Third Amended Complaint. *See id. See also Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.,* Civ. No. 94–3531, at 32–33 (D.N.J. April 22, 1996).

Moreover, because as a matter of law joint and several liability is available only for cost recovery actions under section 107(a), and not in a contribution action between liable or potentially liable parties pursuant to section 113(f)(1), SCH may not seek to impose joint and several liability against the

<hr/>

**7.** The Court's research discloses that *Kramer* is the only recent decision within this district not to follow the majority rule of limiting recovery to contribution under section 113. *Kramer,* 757 F.Supp. at 416. However, the reasoning in *Kramer* is somewhat inconsistent with the Third Circuit's decision in *Smith Land.* Moreover, as the court noted in *Borough of Sayreville,* "[r]e-cent precedent from this Circuit and this district court do not follow *Kramer.* . . . The *Kramer* opinion has also received caustic review from courts outside of this circuit." *Borough of Sayreville,* 923 F.Supp. at 679 n. 15 (citing *Smith Land,* 851 F.2d at 89; *Transtech,* 798 F.Supp. at 1086–87; *TH Agric. & Nutrition Co.,* 884 F.Supp. at 361).

defendants. In *Transtech,* the court specifically rejected a. PRP's attempt to assert a joint and several claim against other PRPs for its response costs, observing that:

> Plaintiff contends that since there never was a judgment issued against them, there was never legal liability to seek contribution for, and therefore its claim is not a claim for contribution. Under general legal principles, a claim for contribution is one in which one liable party attempts to recover from another potentially liable party for its share of the cost.

*Transtech,* 798 F.Supp. at 1086. Other courts have similarly held that joint and several liability is not available to a liable plaintiff which is seeking contribution from other potentially liable parties under CERCLA. *See In re Dant & Russell, Inc.,* 951 F.2d 246, 249 (9th Cir.1991) (allocation of liability, and not joint and several liability, was appropriate where plaintiff is a CERCLA liable party); *Lyncott Corp. v. Chemical Waste Management, Inc.,* 690 F.Supp. 1409, 1419 n. 7 (E.D.Pa.1988) ("liability for contribution under CERCLA is not joint").

For these reasons, the Court will dismiss Count I of the Complaint.

## C. Count III: New Jersey Spill Act

In Count Three of the Third Amended Complaint, SCH alleges that defendants are jointly and severally liable to SCH under the cost recovery provisions of the New Jersey Spill Act. However, SCH cannot maintain such an action but must instead rely on the statutory contribution provision of the Spill Act to initiate an action against other allegedly liable parties, which is the subject of Count IV of the Third Amended Complaint. Because its exclusive remedy is to seek contribution under CERCLA and the Spill Act, rather than joint and several liability, as explained below, the Court is constrained to dismiss Count III.

The New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10–23.11 *et seq.* (hereinafter "Spill Act"), is the New Jersey analog to CERCLA. *Fishbein Family Partnership v. PPG Indus.,* 871 F.Supp. 764, 772 (D.N.J.1994); *New Jersey Dept. of Envtl. Protection & Energy v. Gloucester Env. Mgt.*

*Serv.,* 821 F.Supp. 999, 1009 (D.N.J.1993). Like CERCLA, the Spill Act prohibits the discharge of hazardous substances and provides for the remediation of spills. *See* N.J.S.A. 58:10–23.11g(c)(1) ("Any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault for all cleanup and removal costs no matter by whom incurred."). Owing to the strong parallels between these statutes, much of the law developed under the Spill Act is similar to that under CERCLA. *See Gloucester Env. Mgt. Serv.,* 821 F.Supp. at 1009. *But see Buzby Bros.,* Civ. No. 87–4263, at 29 ("We cannot impose both joint and several and several liability for [recovery of plaintiff's remediation expenditures]. This creates an impossible situation for the court.... Therefore, to the extent that recovery for liability under CERCLA and the Spill Act differ for the alleged lump sum losses, CERCLA's several liability will govern.").

As with CERCLA, the Spill Act in its original version did not provide a private right of action for contribution or cost recovery. *Bowen Engineering v. Estate of Reeve,* 799 F.Supp. 467, 478–79 (D.N.J.1992); *Allied Corp. v. Frola,* 701 F.Supp. 1084, 1091 (D.N.J.1988). Liable private parties therefore were entitled to pursue only contribution under New Jersey common law. Consequently, courts were left to question a liable party's or PRP's right to contribution, which precipitated "reluctance on the part of many dischargers and other responsible parties to enter into cleanup agreements with the Department of Environmental Protection (DEP) for fear that they may not be able to recover some costs from the other liable parties...." Senate Environmental Quality Committee Statement, Senate No. 2657 and Assembly No. 3659, L.1991, c. 372 (hereinafter "SEQC Statement").

Consequently, the New Jersey Legislature amended the Spill Act in 1991 to provide an express right of contribution. The Spill Act, pursuant to the amendment which became effective in 1992, now reads in a manner substantially similar to section 113(f) of

CERCLA, by providing in relevant part as follows:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. . . .

N.J.S.A. 58:10–23.11f(a)(2). The Senate Environmental Quality Committee statement accompanying N.J.S.A. 58:10–23.11(f) has explained that "[t]his substitute sets forth in the Spill Act a provision that allows dischargers and others who clean up and remove a hazardous discharge to seek contribution from other dischargers and persons who conduct cleanups and removals." SEQC Statement, *supra.*

The New Jersey courts have not yet addressed the issue of whether the Spill Act's new right of contribution functions in the same way as under CERCLA, with liable parties limited in their recovery only to such costs as are ascribed to third parties on a several liability basis. But the legislative history of the 1992 amendment and the text itself, when measured against the right of contribution under section 113(f) of CERCLA, support reading the Spill Act now to limit a liable party or PRP to a suit for contribution, not recovery of costs incurred, thereby holding other PRPs only severally liable. In short, to read the amendment as adding a second avenue of recovery in addition to a cost recovery action would leave open the potential for double recovery, which is expressly prohibited under CERCLA, *see infra*, and would require the Court to ignore the legislature's objectives in enacting it, which were to provide liable parties or PRPs with an express means of contribution, not complete cost recovery, that did not previously exist.

The statute's silence as to joint liability is notable as well, since contribution has traditionally existed on a several basis. While N.J.S.A. 58:10–23g(c)(1) specifies that liability shall be joint and several, N.J.S.A. 58:10–23f(a)(2) makes no such statement. Instead, it reads much more closely to section 113(f) of CERCLA, by providing a right of contribution and authorizing the courts to equitably allocate the costs of cleanup and removal among the parties. N.J.S.A. 58:10–23g(c)(1).

Moreover, while CERCLA allows a plaintiff to seek compensation under CERCLA, state law or both, it prohibits double recovery of remediation costs:

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation of the same removal costs or damages or claims pursuant to any other State or Federal Law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

42 U.S.C. § 9614(b). This must be the limit of recovery for a liable party or PRP under the Spill Act, because to extend recovery under the statute beyond a right to seek contribution would contravene CERCLA and leave open the possibility that the claimant could obtain a double recovery. Thus, as the court in *Buzby Bros.,* opined, to the extent that the Spill Act provides otherwise, it is preempted by CERCLA. *Buzby Bros.,* Civ. No. 87–4263, at 29 (citing *Manor Care v. Yaskin,* 1991 WL 10016, at *1 (D.N.J.1991) (citing *Meyer v. Internat'l Playtex, Inc.,* 724 F.Supp. 288, 290 (D.N.J.1988))). *See also In the Matter of Reading Co.,* 900 F.Supp. 738, 744 n. 6 (E.D.Pa.1995) (finding that CERCLA standards for liability preempted state standards because "a contrary result under state law could potentially frustrate federal policy") (citing *United States v. Union Gas Co.,* 743 F.Supp. 1144, 1155 (E.D.Pa.1990)).

In view of the legislative record accompanying the amendment, the language of the statute and the limitations placed on recovery by CERCLA, the Court must conclude that the Spill Act can fairly be read only to allow a PRP a right to seek contribution, not to maintain a cost recovery action. To hold otherwise would fail to appreciate the statutory scheme of the Spill Act, frustrate the

objectives of the amendment and threaten to produce an irreconcilable conflict with CERCLA.

For the foregoing reasons, the Court will dismiss Count III of the Complaint.

### D. COUNTS V & VII: STRICT LIABILITY

In Count V of the Third Amended Complaint, SCH alleges that generator/arranger defendants produced "abnormally dangerous" materials that were disposed of at the Site, *see* Third Amended Complaint ¶ 105, which constituted participation in an abnormally dangerous activity. *Id.* ¶ 106. Plaintiff seeks relief in Count V for contribution under a strict liability common law theory. In Count VII, plaintiff seeks similar recovery pursuant to the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A–1 *et seq.*

Defendants offer two arguments in support of dismissal of Count V. First, they argue that this claim must be dismissed because SCH's claim is time-barred, since SCH did not file suit against defendants within the timeframe permitted by the statute of limitations governing an environmental tort action sounding in strict liability. It appears that defendants intend this argument to apply as well to Count VII. Second, defendants contend that SCH, as a joint tortfeasor, cannot assert a strict liability claim under New Jersey common law.

#### 1. *Statute of Limitations*

N.J.S.A. 2A:14–1 provides a six-year statute of limitations for common law suits for "trespass to real property, for any tortious injury to real or personal property ... [or] for any tortious injury to the rights of another [other than personal injury, libel or slander]. . . . " N.J.S.A. 2A:14–1. "This six-year statute of limitations is applicable to environmental tort actions at common law, and more specifically to environmental actions based on strict liability." *Kemp Industries, Inc. v. Safety Light Corp.,* Civ. No. 92–0095, 1994 WL 532130, *17 (D.N.J. Jan. 25, 1994) (citing *Amland Properties Corp. v. Aluminum Co. of America,* 808 F.Supp. 1187, 1190 (D.N.J.1992); *Hatco Corp. v. W.R. Grace & Co.–Conn.,* 801 F.Supp. 1309, 1323

(D.N.J.1992); *Allied Corp. v. Frola,* 730 F.Supp. 626, 631 (D.N.J.1990)).

It is well settled that the standard governing the time within which a strict liability environmental tort cause of action accrues is the discovery rule, which provides that a cause of action does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis of an actionable claim." *Analytical Measurements,* 843 F.Supp. at 927 (*quoting Viviano v. CBS, Inc.,* 101 N.J. 538, 546, 503 A.2d 296 (1986) (citations omitted)). *See also Kemp Indus., Inc.,* 1994 WL 532130, at *18–19; *Hatco Corp.,* 801 F.Supp. at 1323; *Frola,* 730 F.Supp. at 632. "[T]he statute is triggered by a plaintiff's knowledge of 'material facts,' not by conclusive proof of every relevant fact[,]" *Hatco Corp.,* 801 F.Supp. at 1324, thus requiring a plaintiff to be aware of facts material to his injury, not the legal significance of the facts. *Lynch v. Rubacky,* 85 N.J. 65, 73, 424 A.2d 1169 (1981) (citing *Burd v. New Jersey Telephone Co.,* 76 N.J. 284, 291–93, 386 A.2d 1310 (1978)). The discovery rule tolls the statute of limitations until the plaintiff becomes aware that he has suffered an injury due to the fault of another party. *See Vispisiano v. Ashland Chem. Co.,* 107 N.J. 416, 434, 527 A.2d 66 (1987) (accrual of action occurs when it is evidence that the cause of the injury is "(a) the fault of (b) a third party."). It is important to note that New Jersey law does not require that the plaintiff know the identity of the responsible party for the limitations period to begin to run. *Apgar v. Lederle Laboratories,* 123 N.J. 450, 456, 588 A.2d 380 (1991) ("That the identity of a potential defendant is not a requirement for commencing an action is now beyond argument. In *Viviano* ..., we made it clear that a plaintiff can file a complaint naming "John Doe" defendants if the actual identity of the wrongdoer is unknown."). *See also Amland Properties,* 808 F.Supp. at 1192 (applying *Viviano* and *Apgar* to common law environmental tort action); *Kemp Indus., Inc.,* 1994 WL 532130, at *18–19 (noting that *Apgar* abrogates *Frola,* which held that environmental tort action under New Jersey law

**1368**

did not accrue until plaintiff knew defendant's identity).

■ Application of the foregoing principles makes clear that the Court cannot conclude at this point in the litigation that the claim is time-barred. SCH initiated this lawsuit in March 1995. Contamination on the Site was confirmed in the early 1980s, the Site was added to the NPL in 1984, and a remedial investigation was completed before March, 1989. *See* Third Amended Complaint ¶¶ 11–17. *See also supra* pages 1358–59. SCH's predecessor-in-interest, SLI, was the owner and/or operator of the landfill at the time contamination of the Site was confirmed and the Site was added to the NPL. Defendants insist that as a consequence of these activities SCH knew or should have known of the existence of contamination at the Site and its potential right to pursue a strict liability claim against other parties for engaging in "abnormally dangerous activities" or, in other words, of the state of facts which might give rise to such a claim. *See Vispisiano,* 107 N.J. at 426, 527 A.2d 66; *Amland Properties,* 808 F.Supp. at 1192.

■ However, in determining whether SCH's claim is time-barred the date from which we measure back is not February 27, 1995, when SCH filed this action, but June 20, 1994, the undisputed date of effectiveness for the Tolling Agreements. It is undisputed that the Tolling Agreements bind all parties to this motion, as it is undisputed that the Agreements tolled all claims that had not already expired by that date. Plaintiff's Memorandum in Opposition to Dismissal at 29–30 & n. 6; Moving Defendants' Reply Brief at 16. The question is thus whether SLI/SCH knew or reasonably should have known of the material facts—*i.e.,* that it had suffered an injury attributable to the fault or actions of another party, specifically the arranger/generator defendants—before June 20, 1988.

**8.** It must be noted that this is not a case in which a party either occupies property for a short period of time before learning of contamination or merely holds the property without conducting any activity there, and therefore the party should know from the finding of contamination itself that other sources are responsible. Since 1962,

Based on the record, this Court cannot so find. Defendants accurately note that plaintiff knew of Site contamination in the early 1980s, due to the Administrative Consent Order requiring SCH to implement a plan of closure for the landfill in October, 1980, the Site's placement on the NPL in June, 1984 and the EPA's conclusion that the SLI/SCH landfills were a significant source of groundwater contamination. However, that is all they offer in asserting that the claim is time-barred. Their argument is flawed because it seeks to bootstrap the point at which plaintiff should know of another party's fault to the first instance in which the NJDEP or EPA finds the existence of contamination, evidently ascribing to SCH a presumption that other parties must have contributed to the sources of contamination. We cannot endorse this overbroad interpretation of the discovery rule; nor can we determine as a matter of law that SCH should have known of other parties' fault on or before June 20, 1988, when nothing before me suggests that SCH knew anything more than the landfill had been closed and the Site was contaminated.[8] *Compare Kemp Indus.,* 1994 WL 532130, at *20 (granting defendant's motion for summary judgment on statute of limitations after finding that by date of accrual, "[p]laintiffs knew of the existence of high levels of cadmium and cadmium compounds throughout the Hanover Site, that the cadmium compounds constituted a health hazard and required removal and that a third party was responsible for the presence of the cadmium deposits"); *Amland Properties Corp.,* 808 F.Supp. at 1194–95 (granting third-party defendants' motion for summary judgment against plaintiff's strict liability claim after finding that plaintiff clearly knew before accrual date that property was contaminated with PCBs, the source of the contamination and its activities which produced the PCBs, knew time frame of contamination, and knew interim holders to property's title).

SLI had maintained on the Site a landfill that accepted a variety of municipal and industrial wastes, some of which were concededly hazardous. Therefore, it cannot even be gainsaid that the mere requirement of closure or placement on the NPL should have alerted SCH that other parties were probably at fault.

It was not until completion of the Remedial Investigation Report in May, 1989 and the Feasibility Study in December, 1989, that SLI/SCH knew or should have known that other entities had contributed to the groundwater contamination. Indeed, it is not at all clear that before completion of the Remedial Investigation, which first noted the presence of volatile organic and inorganic compounds and hazardous substances in aquifiers underlying the Site, plaintiff could do anything more than merely speculate that other parties were also responsible for contaminating the Site. Under these circumstances, defendants have not proven as a matter of law, as they must to prevail under Rule 12(c), that plaintiff knew of its injury and the fault of another party sufficient to the limitations period to accrue on or before June 20, 1994. Therefore, the Court must reject defendants' motion to dismiss based on the statute of limitations.

### 2. No Common Law Contribution among Joint Tortfeasors

Defendants also assert that SCH as a joint tortfeasor is barred from seeking contribution from other PRPS under a common law theory of strict liability. Relying on *Judson v. Peoples Bank & Trust Co.*, 17 N.J. 67, 110 A.2d 24 (1954) and *Arcell v. Ashland Chemical Co.*, 152 N.J.Super. 471, 378 A.2d 53 (App.Div.1977), defendants assert that Count Five, which is pleaded as a common law claim rather than one pursuant to the Joint Tortfeasors Contribution Act ("JTCA"), 2A:53A-1 *et seq.*, cannot be sustained as a matter of law.

It has long been the common rule in New Jersey and most other states that a joint tortfeasor could not seek contribution from a fellow tortfeasor. *See Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 86 n. 16, 101 S.Ct. 1571, 1578, 67 L.Ed.2d 750 (1981) (noting that the majority rule of non-contribution among joint tortfeasors traces to *Merryweather v. Nixan*, 8 Term.Rep. 186, 101 Eng. Rep. 1337 (K.B.1799)); *Judson*, 17 N.J. at 87–88, 110 A.2d 24 (discussing *Merryweather* and noting that only under very narrow circumstances would considerations of equity

allow unintentionally negligent joint tortfeasor to seek contribution) (citing *Kanzler v. Smith*, 142 N.J.Eq. 609, 621, 61 A.2d 170 (Ch.Div.1948). The doctrine was based on the same theory as contributory negligence, *i.e.*, that "[a]ny fault kept a claimant from recovering under the system." *Ostrowski v. Azzara*, 111 N.J. 429, 436, 545 A.2d 148 (1988). Thus, "[a] defendant in a tort action had no right to implead other suspected tortfeasors or to seek from fellow tortfeasors contribution for payments made in excess of his or her proportion of fault." *Dunn v. Praiss*, 139 N.J. 564, 575, 656 A.2d 413 (1995) (citing *Young v. Latta*, 123 N.J. 584, 588–89, 589 A.2d 1020 (1991).

To foster a system under which those who were at fault would bear responsibility proportionately, the rule was substantially abrogated in 1952 with the passage of the JTCA, which provides that "[t]he right of contribution exists among joint tortfeasors." N.J.S.A. 2A:53A–1. The JTCA defines "joint tortfeasor" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them...." N.J.S.A. 2A:53A–2. The JTCA also provides as follows:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share....

N.J.S.A. 2A:53A–3. After the New Jersey Supreme Court's decision in *Dunn*, it is clear that the Comparative Negligence Act, N.J.S.A. 2A:15–5.1 *et seq.* modified recovery under the JTCA such that contribution is not accorded by pro rata shares, but instead based on the proportion of fault as determined by the trier of fact. *Dunn*, 139 N.J. at 576, 656 A.2d 413 ("The effect of the Comparative Negligence Act is to measure

the remedy by percentage of responsibility rather than by the number of culpable parties.").

It is clear that plaintiff's common law strict liability contribution claim therefore must fail. In short, the foregoing discussion reveals that there simply was no common law rule that allowed for such recovery, short of the equitable exceptions carved out by an extraordinarily small number of equity courts. *See Mayor and Council of the Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1061 (D.N.J.1993) (noting that there is no common law right of contribution among joint tortfeasors in New Jersey). Plaintiff neither provides such legal authority nor attempts to establish that any of the equitable considerations to which the *Judson* court alluded applies here. Instead, in response to defendants' challenge to its common law strict liability claim, SCH readily asserts that "[t]he Moving Defendants fail to recognize that in 1952, New Jersey common law was modified by the enactment of the Joint Tortfeasors Contribution Law." Accordingly, the Court will dismiss Count V, and will consider plaintiff's JTCA-based strict liability claim *infra.*

### 3. *Application of the JTCA*

■ With regard to Count VII, which seeks recovery pursuant to the JTCA, defendants aver that SCH has failed to establish the prerequisites to such relief. First, defendants contend that the complaint fails to plead liability in tort. They reason that liability under CERCLA and the Spill Act is not liability in tort under New Jersey law, because CERCLA and the Spill Act impose liability pursuant to statute and irrespective of fault, while torts are the product of common law and provide common law remedies for damages to the injured person.

■ Defendants also maintain that SCH has failed to allege recovery and payment of a money judgment, which is another element of a prima facie case under the JTCA. *See Tefft v. Tefft,* 192 N.J.Super. 561, 566–67, 471 A.2d 790 (App.Div.1983). *See also Mijon v. Acquaire,* 51 N.J.Super. 426, 439, 144 A.2d 161 (App.Div.1958) (holding that the Act provides a right of action to one joint tortfeasor

"after he has paid a judgment in whole or in part"). They assert that the discharge of a portion of a common liability, including environmental response costs, does not rise to the level of a judgment. *See Elf Atochem N. Am. v. United States,* 833 F.Supp. 488 (E.D.Pa.1993).

Defendants' first line of reasoning—that SCH has not pleaded the elements of a tort—is readily dismissed. Count V of the Third Amended Complaint pleads in detail plaintiff's theory of strict liability based upon the generator defendants' allegedly abnormally dangerous activities, *see* Third Amended Complaint ¶¶ 111–15, and therefore sounds in common law tort. *See Wundrack v. Armstrong World Indus.,* Civ. No. 89–1912, 1991 WL 172956, at \*7 (D.N.J. May 28, 1991) ("A defendant found liable under a strict liability theory will be considered at fault for purposes of applying the Joint Tortfeasor's Contribution Law.") (citing *Suter v. San Angelo Foundry & Machine Co.,* 81 N.J. 150, 163–64, 406 A.2d 140 (1979)), *aff'd,* 958 F.2d 366 (3d Cir.1992). *See also Klockner & Klockner,* 811 F.Supp. at 1061 (1979)), *aff'd,* 958 F.2d 366 (3d Cir.1992). *See also Klockner & Klockner,* 811 F.Supp. at 1061 (plaintiff's mistake presenting contribution claim under common law was not fatal to its right to pursue it under JTCA, because allegations provided defendant fair notice of nature of claim and there is no requirement that count refer specifically to its statutory basis). Indeed, unlike the plaintiff in *Klockner,* SCH has specifically notified defendants that it would seek relief pursuant to the JTCA and incorporated by reference the factual allegations alleging tort liability in Count VII. *See* Third Amended Complaint ¶¶ 119–21.

Defendants also argue that SCH cannot establish that it has paid a money judgment, another element integral to maintaining a cognizable claim under the JTCA. N.J.S.A. 2A:53A–3. *See Sattelberger v. Telep,* 14 N.J. 353, 367, 102 A.2d 577 (1954) ("[I]t is incumbent on the contribution claimant in a case such as this to establish a common liability for the wrongful act … made on the basis of the judgment and the quantum of damages ensuing from the joint offense … The onus

of proof of the common burden is on the plaintiff demanding the sharing of the burden.").

 Plaintiff accurately notes that New Jersey law does not favor a restrictive interpretation of "judgment" as used in the JTCA. In *Young v. Steinberg*, 53 N.J. 252, 250 A.2d 13 (1969), the New Jersey Supreme Court held that it was not restricted to money judgments, which would have excluded consent judgments from satisfying the statute. *Id.* at 254–55, 250 A.2d 13. The court reached this conclusion due to concern that a narrow interpretation of judgment would not encourage contribution or the equitable distribution of liability. *Id.* at 255, 250 A.2d 13. Accordingly, the court opined that "[a] suit for contribution based on a settlement which has been elevated to the status of a judgment by formal court proceeding, and which discharges the injured party's claim against a non-settling joint tortfeasor, comports with the intent of our statutory scheme." *Id. See also Tefft*, 192 N.J.Super. at 565, 471 A.2d 790.

However, the statute quite clearly requires a settlement or other device bearing an imprimatur of judicial approval and barring further litigation between the injured party and the PRPs on those claims. In *Polidori v. Kordys, Puzio & DiTomasso, AIA*, 217 N.J.Super. 424, 526 A.2d 230 (App.Div.1987), the court confronted the issue of whether a settlement memorialized in a stipulation of dismissal was sufficient to constitute a judgment under the JTCA. Holding that it was insufficient, the court concluded that it was not "elevated to the status of a judgment by a formal court proceeding," as required by *Young. Id.* at 432, 526 A.2d 230. To find that it was sufficient to constitute a judgment despite the fact that it involved no formal court proceeding, the court held, would constitute a failure "to enforce the statute as written." *Id.*

Following this reasoning in *Elf Atochem North America, Inc.*, the Eastern District of Pennsylvania held that a consent decree between the plaintiff and the EPA did not constitute a judgment under the JTCA. *Elf Atochem North America, Inc.*, 833 F.Supp. at 497–98. In that case, plaintiff owned five acres of the subject site, which was located in Hunterdon County, New Jersey. *Id.* at 491. By 1983, the EPA ascertained that the site was contaminated and placed the site on the NPL. *Id.* After conducting a remedial investigation and feasibility survey, the EPA notified plaintiff and Witco Corporation that it considered them PRPs and sought settlement and response costs. *Id.* at 492. Elf Atochem agreed to reimburse the EPA for response costs already incurred and to pay for future necessary response actions. *Id.* Plaintiff was, at the time of the Eastern District of Pennsylvania's decision in the case, the only party responsible for the costs, which the EPA estimated would exceed $45,-000,000.00. *Id.*

Plaintiff brought a claim for contribution under the JTCA against Witco Corp. and Witco Corp. moved for summary judgment. Granting the motion, the court held that the consent decree between plaintiff and the EPA did not constitute a judgment under the JTCA because it did not discharge the United States' right to sue other parties. *Id* at 497. Thus, the consent decree did not discharge the EPA's claim against non-settling tortfeasors. *Id.* ("[W]e can reach no other conclusion but that the Consent Decree between Atochem and the United States does not operate to extinguish the government's right to sue other parties or potentially responsible parties such as Witco. This Court therefore finds that Elf Atochem does not have a contribution claim under New Jersey law.").

In this case, SCH has not produced, nor alleged the existence of, a judgment that prevents the EPA from instituting an action against defendants or any other PRPs in this action. Its agreement with the EPA thus does not bar the EPA from instituting an action against any of the defendants, and certainly was not the product of a formal judicial proceeding. As such, the policy of promoting contribution as expressed in *Young* notwithstanding, there is no agreement that has been elevated to the status of a judgment by a formal judicial proceeding.

 However, the Court will dismiss Count VII without prejudice. While SCH

has not demonstrated as yet the existence of a judgment as required by N.J.S.A. 2A:53A–3, that does not foreclose the possibility that the common liability might subsequently be reduced to a judgment. New Jersey law instructs that in keeping with the entire controversy doctrine and judicial economy, a contribution claim under the JTCA should either remain in the case even if asserted prematurely, or be reinstated in an action if plaintiff subsequently satisfies its threshold requirements. *Bendar v. Rosen,* 247 N.J.Super. 219, 237, 588 A.2d 1264 (App.Div.1991); *Perello v. Woods,* 197 N.J.Super. 539, 543–44, 485 A.2d 350 (Law Div.1984); *Markey v. Skog,* 129 N.J.Super. 192, 200, 322 A.2d 513 (Law Div.1974).

For the foregoing reasons, the Court will dismiss Count V and will dismiss Count VII without prejudice to SCH's right to reinstate it if the common liability is reduced to a judgment.

### E. COUNT VI: UNJUST ENRICHMENT

■ The Sixth Count of the Third Amended Complaint seeks recovery for alleged unjust enrichment. Defendants aver that it is a claim for restitution under common law, and that SCH is entitled to no such recovery because it only performed its duty.

■ It is well settled that a party seeking restitution under common law for unjust enrichment must demonstrate: (1) an enrichment to another; and (2) that an injustice would result if recovery for enrichment is denied. *Klockner,* 811 F.Supp. at 1058; *Ciba–Geigy,* 1993 WL 668325, at *8–9. Restitution of a benefit conferred is not available if that benefit is the result of performing one's own duty. *See* RESTATEMENT OF RESTITUTION § 106 (1937) ("a person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution").

In this case, it is undisputed that SCH as the owner of the Site and/or as successor-in-interest to SLI, which as owner/operator of the Site had permitted the dumping of municipal and industrial wastes that included hazardous substances, was under a legal duty pursuant to both CERCLA and the Spill Act to remediate the site. In fact, SCH was ordered to remediate the Site pursuant to the UAO under section 106 issued by the EPA. Accordingly, SCH is barred from recovery.

In both *Klockner* and *Ciba–Geigy,* the court similarly concluded that the mere fact that government authorities required the plaintiff to perform remedial activity did not constitute enrichment for the benefit of the defendant. *Klockner,* 811 F.Supp. at 1058; *Ciba–Geigy,* 1993 WL 668325, at *8–9. Accordingly, in view of SCH's independent obligation to perform remediation activities at the Cinnaminson–Delran Site, its claim for unjust enrichment must be dismissed as a matter of law.

### F. MOVING THIRD–PARTY DEFENDANTS' MOTION TO DISMISS

■ Having determined that SCH may seek recovery only for contribution under section 113 of CERCLA and N.J.S.A. 58:23–11f(a)(2) of the Spill Act, the Court now must consider whether the limitation of several liability under section 113 compels dismissal of defendants'/third-party plaintiffs' claims against the moving third-party defendants. The moving third-party defendants correctly reason that because a PRP may seek only contribution from other PRPs rather than joint and several liability, and no defendant may be held liable for more than its fair share of costs, there will be no excess amount of liability for which the defendants will be entitled to seek contribution from them. Memorandum of Law in Support of Moving Third–Party Defendants' Motion to Dismiss at 2, 18.

Defendants/Third–Party Plaintiffs[9] and the United States agree with the moving third-party defendants that a PRP is limited to contribution under section 113, and that SCH may recover from each defendant only its fair share of costs associated with the

---

9. To preserve clarity and consistency, the Court will continue to refer to the third-party plaintiffs as "defendants."

Site. *See* Third–Party Plaintiffs' Opposition to Third–Party Defendants' Motion to Dismiss at 4–5; Response Brief of United States at 11–12. *See also Gould Inc.,* 901 F.Supp. at 913 (rejecting plaintiff's attempt to shift orphaned shares to defendants because "each party is only responsible for [its] proportionate share of the harm caused at the [site]"); *Transtech Indus.,* 798 F.Supp. at 1086 ("Under general legal principles, a claim for contribution is one in which one liable party attempts to recover from another potentially liable party for its share of the costs.").

The parties also agree that in enacting section 113(f), "Congress used the word 'contribution' in the conventional sense, and fully intended courts to give the word its customary meaning." *United Technologies Corp.,* 33 F.3d at 103. The customary meaning of contribution is as follows:

> Right of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear. Under principle of "contribution," a tortfeasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the plaintiff.

BLACK'S LAW DICTIONARY 328 (6th ed. 1990). In other words, PRPs seeking contribution are entitled "to recover from another responsible party [only] that portion of its costs that are in excess of their *pro rata* share of aggregate response costs." *United Technologies Corp.,* 33 F.3d at 103. *See also Control Data Corp.,* 53 F.3d at 935; *Colorado & Eastern R.R. Co.,* 50 F.3d at 1534–36; *Akzo Coatings, Inc.,* 30 F.3d at 764.

Defendants maintain, however, that applying this reasoning to dismiss the third-party claims at this juncture would be premature, would frustrate the Court's efforts to allocate any orphaned shares at a subsequent point in the litigation, and would force either SCH or defendants to shoulder the burden of the orphaned shares. As the United States emphasizes: "CERCLA should not be interpreted to yield a result which allocates costs for orphaned shares to a particular party based on its position in the litigation daisy-chain."

*Id.* at 11. ALCOA and the other moving third-party defendants observe, however, that allowing first-liable parties to seek cost recovery would unfairly burden third-party defendants with the orphaned shares, despite the possibility that they are less culpable than defendants, merely because they are lower on the "litigation chain." Third–Party Defendants' Memorandum in Support of Dismissal at 21–22.

Both of these positions have merit insofar as they aver that, the limits of section 113 aside, a party's position in the litigation should not frustrate the Court's duty to "allocate response costs among the liable parties under such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). For these reasons, the United States urges the Court to grant third-party defendants' motion to dismiss, but "make clear ... that orphaned shares are allocable in a section 107(a)/113(f) contribution action as costs to be equitably apportioned by the Court[,]" rather than pursuant to a *per se* rule. *Id.* at 12.

It is not clear whether the United States asserts that the Court can dismiss the moving third-party defendants from the action and nonetheless subsequently assert jurisdiction over them to hold them accountable for shares orphaned once the liabilities of the primary defendants are respectively quantified, pursuant to section 113(f). It is clear that the Court could not do so unless the moving third-party defendants were again named parties to the action. Moreover, it is unclear from the record whether SCH has named these third-party defendants as defendants to its contribution claims in the primary action. Thus, if the Court were to dismiss the third-party defendants with prejudice at this juncture, it would risk frustrating its equitable allocation duty under section 113(f)(1).

Nonetheless, it does not appear at this point that defendants have a cognizable claim for contribution against the third-party defendants. They cannot allege, at least at this point, that they have paid to SCH more than their respective pro rate shares, since their liability to SCH has not yet been determined, and in any event it is clear that section 113(f)

prevents them from doing so. Therefore, the Court, in its equitable power to allocate orphan shares pursuant to section 113(f), will stay the claims against the moving third-party defendants pending a subsequent determination as to contribution under CERCLA or the New Jersey Spill Act, and as to whether the orphaned shares, if any, should be allocated among them.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the moving defendants' motion for judgment on the pleadings pursuant to FED. R.CIV.P. 12(c). The Court will deny without prejudice the moving third-party defendants' motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), and will stay those claims as to the moving third-party defendants. Finally, the Court will grant the United States' motion for leave to file a brief in response to the third-party defendants' motion to dismiss. An appropriate form of Order is filed herewith.

## ORDER

For the reasons set forth in the Memorandum Opinion issued on this same date;

IT IS on this 19th day of August, 1996,

ORDERED that the moving defendants' motion to dismiss the Complaint pursuant to FED.R.CIV.P. 12(b)(6) is hereby converted to a motion for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c), and is hereby GRANTED; and it is further

ORDERED that Counts I, III, V and VI of the Third Amended Complaint be and hereby are DISMISSED in their ENTIRETY; and it is further

ORDERED that Count VII of the Third Amended Complaint be and hereby is DISMISSED WITHOUT PREJUDICE as to plaintiff's right to reassert it at such time as appropriate; and it is further

ORDERED that the moving third-party defendants' motion to dismiss the Third–Party Complaint be and hereby is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that the claims of the Third–Part Complaint be and hereby are STAYED as against the moving third-party defendants, which are listed in the attached appendix; and it is further

ORDERED that the United States' motion for leave to file a response brief is hereby GRANTED.

## APPENDIX

The record reflects that the following third-party defendants have moved for dismissal of the Third–Party Complaint:

Aluminum Company of America

American Packaging Corp.

AMPCO Pittsburgh Corp.

Betz Laboratories, Inc.

Burlington Township

Camden City Board of Education

Cherry Hill Township Department of Public Works

Cinnaminson Township

Cinnaminson Township Sewerage Authority

City of Camden

City of Philadelphia

Columbian Carbon Co.

Continental Can Co.

Coyne, George S. Chemical Co.

Daubert Chemical Co.

Delanco Township

Delran Township

Delran Township Sewerage Authority

DeSoto Inc.

Disston Precision, Inc.

Doylestown Borough

Einstein Hospital

Frankford Hospital of Philadelphia

Frankford Arsenal

GAF Corp.

The Gilbert Spruance Co.

Honeywell, Inc.

International Paper Co., Inc.

International Telecommunications Equipment Corp.

JFK Physicians and Hospital Org., Inc.

Kelsey Hayes Co.

Lindenwold Borough

Maple Shade Sewer Authority

Messinger Bearings Corp.

Micro–Tek Corp.

Nabisco Holdings Corp.

Navistar International Transportation Corp.

Palmyra Borough

PECO Energy Co.

Plum Creek Tool Works

Rancocas Hospital

Riverside Township

Riverton Borough

Sears Roebuck & Co., Inc.

SPS Technologies a/k/a Standard Pressed Steel

Stern, Jacob & Son, Inc.

Stratford Sewerage Authority

Theodore E. Mozer, Inc.

TRW, Inc.

Warwick Township

Willingboro Township

American Premier Underwriters, Inc.

Minnesota Mining and Manufacturing Corp. (3M)